```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| THREASTON WARREN, JR., et al., | |
| Plaintiffs, | Civil Action<br>No. 10-5343 (JBS/KMW) |
| v. | |
| ALBERT FISHER, III, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Lloyd Freeman, Esq.
John Patrick Kahn, Esq.
Joseph A. Martin, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033
     -and-
Tracey F. Oandasan, Esq.
OANDASAN & COOPER
28 East Avenue
P.O. Box 326
Woodstown, New Jersey 08098
     Counsel for Plaintiff

Dean R. Wittman, Esq.
ZELLER & WIELICZKO LLP
Ten Melrose Avenue, Suite 400
Cherry Hill, NJ 08003
     Counsel for Defendant Michael Gibson

Elizabeth A. Dalberth, Esq.
THE LAW OFFICES OF MICHAEL J. DUNN
Two Executive Campus, Suite 402
2370 Route 70
Cherry Hill, NJ 08002
     Counsel for Defendant Sharon Fox

**SIMANDLE**, District Judge:

**I.   INTRODUCTION**

       This matter arises out of a complex dispute between

Plaintiffs Threaston Warren, Jr.; Marjorie Warren; and

Continental Aggregate Corp., LLC and Defendants Township of Quinton, New Jersey; Albert Fisher, III; Robert Howell; Joseph Hannagan, Jr.; Michael Gibson; and Sharon Fox.  Plaintiffs claim that the defendants colluded to injure Plaintiffs Threaston and Marjorie Warren and Continental Aggregate Corp. by attempting to drive Continental out of business or out of Quinton Township. Plaintiffs' First Amended Complaint alleges fifteen counts, including the New Jersey Racketeer Influenced and Corrupt Organization Act (RICO) (Counts 1 and 2), civil conspiracy (Count 3), violations of 42 U.S.C. §§ 1983 and 1985 (Counts 4-8), tortious and intentional interference with prospective economic advantage (Counts 9 and 10), trade libel/commercial disparagement (Count 11), assault and battery (Count 12), trespass to land (Count 13), and negligence (Count 14).[1]

Presently before the Court are two motions to dismiss. Defendant Michael Gibson moves to dismiss as to himself the §§ 1983 and 1985 claims (Counts 4-6 and 8)[2], and also to dismiss the negligence claim as to himself (Count 14), for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  [Docket Item 28.]  Defendant Sharon Fox joins in Defendant Gibson's motion with regard to Counts 4-6 and 8, and additionally moves to dismiss as to herself, Counts 1 through 11

---

[1] Count 15 restates all other counts against various unidentified John Doe defendants.

[2] Count 7 names only the Township of Quinton.

and 13 for failure to state a claim. [Docket Item 31.] Because the Court finds that Plaintiffs' Amended Complaint does not show an entitlement to relief from these Moving Defendants on the identified causes of action, the Court will grant Defendants' motions.

**II.  BACKGROUND**

The facts set forth here are those alleged in the Amended Complaint which the Court must accept as true for purposes of a Rule 12(b)(6) motion.  Plaintiffs Threaston (Ed) Warren and Marjorie Warren lease land to Plaintiff Continental Aggregate Corp. in Quinton Township on which Continental operates a mining operation.  Am. Compl. ¶¶ 14-15.  Beginning in July, 2007, Plaintiffs began experiencing difficulties with various permit and site plan approvals in Quinton Township, which first materialized with the denial of Plaintiff Continental's proposed land use application and subsequently devolved from there.  Am. Compl. ¶¶ 19-31.  Plaintiffs allege that over the course of the next two and one half years, Defendants, allegedly acting in concert with one another, engaged in a sustained and far-ranging conspiracy with the aim of driving Plaintiff Continental out of Quinton Township.

To this end, various combinations of Defendants took several courses of action, including the following: negligently or intentionally publishing false allegations that Plaintiffs

violated the law (Am. Compl. ¶¶ 44-48); targeting Plaintiffs for an inordinate number of site inspections (Am. Compl. ¶¶ 49-52, 71-75); creating a sham position within the Quinton township government for the sole purpose of harassing Plaintiffs (Am. Compl. ¶¶ 53-62); attempting to change Quinton Township ordinances to further restrict Plaintiffs' business (Am. Compl. ¶¶ 63-70); physically attacking Plaintiff Ed Warren after a Quinton Township Planning Board meeting (Am. Compl. ¶¶ 76-81); attempting to "pack" the Quinton Planning Board with members hostile to Plaintiffs' interests (Am. Compl. ¶¶ 82-86); and trespassing on Plaintiffs' land to steal soil samples in an effort to create evidence of illegal mining operations (Am. Compl. ¶¶ 87-92). Plaintiffs allege that this conspiracy led, ultimately, to the loss of business of approximately $30 million. Am. Compl. ¶ 96.

Defendant Quinton Township is a municipality of the State New Jersey, and several of the Defendants, including Defendants Fisher, Howell, and Hannagan, were public officials of Quinton at the time of the events alleged (hereafter, "the Township Defendants"). Am. Compl. ¶¶ 8-11. The Moving Defendants, Defendants Gibson and Fox, however, are not alleged to have been public officials in any capacity, but merely private individuals who, Plaintiffs claim, have conspired with the Township Defendants. Am. Compl. ¶¶ 12-13.

Specifically, Plaintiffs allege the following facts about Defendant Gibson. First, he sent approximately five letters of complaint[3] to Quinton Township and two letters to the Salem County Department of Health over an unknown period of time that contained false statements claiming Plaintiff Continental was engaging in illegal or unsafe activities on the Warrens' property. Am. Compl. ¶¶ 45-48. The Township Defendants allegedly used Gibson's letters to justify their scheme of exposing Plaintiffs to harassment and an inordinate number of inspections. Id. ¶ 50. Plaintiffs allege that "a number of these inspections were directed as a result of and in conjunction with defendant Gibson's false allegations. . . ." Id. ¶ 75.

Secondly, both Defendant Gibson and Defendant Fox physically attacked Plaintiff Ed Warren on April 14, 2009, after a Quinton Township Planning Board meeting that all three attended. Id. ¶¶ 77-78. Plaintiffs allege that this attack was part of the conspiracy. Id. ¶ 81.

Plaintiffs initiated this action on September 14, 2010 in the Superior Court of New Jersey, Salem County. On October 15, 2010, Defendant Township of Quinton removed the action to this Court, pursuant to 28 U.S.C. § 1446, as the Complaint alleged

---

[3] The Amended Complaint is not specific regarding precisely how many letters were sent, as several of the letters are identified multiple times. Thus, making every reasonable inference in favor of Plaintiffs, the Court counts every separate reference to a letter or an accusation as alleging a separate letter, unless the Amended Complaint explicitly says otherwise.

5

violations of federal law. [Docket Item 1.] Thereafter, Defendant Sharon Fox filed a motion to dismiss on November 10, 2010. [Docket Item 10.] Plaintiffs then filed their Amended Complaint [Docket Item 14], whereupon Defendant Fox withdrew her original motion to dismiss. [Docket Item 30.] Both Defendant Gibson and Defendant Fox eventually filed motions to dismiss portions of the Amended Complaint. Defendant Gibson moves to dismiss, as to himself, Counts 4, 5, 6, 8, and 14 of the Amended Complaint. Defendant Fox moves to dismiss, as to herself, all counts except Counts 12 and 14.

## III. DISCUSSION

### A. Standard of Review

In order to give defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3). These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility of legal misconduct). See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009). The Rule 12(b)(6) standard applies to complaints that were originally filed in state court and thereafter removed to federal court, see Fagin v. Gilmartin, 432 F.3d 276 (3d Cir.

6

2005), especially where, as in the present case, the plaintiff has had an opportunity, after removal, to amend the complaint to better conform to the federal standards post-Twombly and Iqbal.

In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S.Ct. at 1949.

The Third Circuit Court of Appeals instructs district courts to conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim upon which relief may be granted. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (citations omitted).  The analysis should be conducted as follows:

> (1) the Court should separate the factual and legal elements of a claim, and the Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; and (2) the Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief, so the complaint must contain allegations beyond plaintiff's entitlement to relief.  A plaintiff shows entitlement by using the facts in his complaint.

7

Id.

   **B.   Analysis**

      1.   Conspiracy

   Because most of the arguments for and against granting the Moving Defendants' motions devolve, ultimately, to whether or not Plaintiffs have sufficiently alleged that the private citizens, movants Gibson and Fox, joined a conspiracy with the Township Defendants, the Court will first address the sufficiency of Plaintiffs' conspiracy allegations.

   Plaintiffs allege that all "Defendants have conspired for the purpose of committing the unlawful and tortious acts" alleged throughout the Amended Complaint.  Am. Compl. ¶ 113.  The Plaintiffs go on to allege that "Defendants knowingly and intentionally agreed to commit such acts in an effort to harm Plaintiffs" and that "Defendants employed unlawful means to achieve these objectives, and, in carrying out their conspiracy, took overt action in furtherance of their objectives. . . ."  Id. ¶¶ 114-15.

   To state a claim for civil conspiracy in New Jersey, a Plaintiff must allege

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.

Banco Popular North America v. Gandi, 184 N.J. 161, 177 (2005). Thus, to state a claim for civil conspiracy, Plaintiffs must allege that the Defendant (1) entered into an agreement with at least one other person, (2) for the purpose of committing an unlawful act, and (3) one of the conspirators then took at least one overt act in furtherance of the agreement, and (4) plaintiff suffered some damage as a result.

Were the Court obligated to accept as true every conclusory statement in Plaintiffs' civil conspiracy claim, the Court would be required to find that Plaintiffs have sufficiently alleged the existence of a conspiracy. However, as Iqbal and Twombly instruct, the Court is, in fact, not required to accept as true "legal conclusions couched as a factual allegation" or "a formulaic recitation of the elements of a cause of action." Twombly, 555 U.S. at 555 (quoted in Iqbal, 129 S.Ct. at 1949-50).

The Court finds that Plaintiffs' paraphrase of the elements of a claim for civil conspiracy, without alleging facts that would permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged" do not alone suffice to allege that Defendants Gibson and Fox entered into a conspiracy with the Township Defendants.

Of course, Plaintiffs plead additional facts beyond the civil conspiracy claim. However, the Court finds that those specific facts, as to Defendants Gibson and Fox, do not raise the allegation of conspiracy to the "plausibility" standard announced

9

in Twombly.  Plaintiffs allege that Defendant Gibson wrote approximately five letters of complaint to the Township Defendants (and two others to the Salem County Department of Health) that contained falsehoods, and that the Township Defendants then subjected Plaintiffs to "an inordinate number" of site inspections, not required of the two other mines operating in town, and charging Plaintiffs "tens of thousands of dollars" for them.  Am. Compl. ¶¶ 45-51.  The Court finds these allegations do not meet Twombly's plausibility standard to state grounds for civil conspiracy.

In Twombly, the Court considered the factual allegations of the plaintiffs, which included the factual allegation that the defendants in an antitrust action were engaging in parallel pricing behavior, and concluded that, because such factual allegations were only "consistent" with an unlawful price fixing conspiracy, and were "more likely explained by lawful, unchoreographed free-market behavior," the allegations were insufficient to state a claim.  Iqbal, 129 S. Ct. at 1950 (discussing Twombly, 550 U.S. at 565-67).  In the instant Amended Complaint, there are no factual allegations, other than the fact of the letters and their falsity, to raise an inference that Defendant Gibson had entered into an agreement with the Township Defendants.  Letters of complaint by a private citizen urging officials to investigate do not suggest the existence of a

10

corrupt agreement between the citizen and the officials, who are free to act upon or ignore such letters in their discretion.

Secondly, Plaintiffs allege that Defendant Gibson physically attacked Plaintiff Ed Warren on April 14, 2009, after a Planning Board meeting, and Defendant Fox joined the attack, both Defendants striking Plaintiff multiple times. Am. Compl. ¶¶ 77-78. These facts, at most, raise an inference that these two Defendants had an agreement between themselves to attack Plaintiff, but does not raise an inference that they took these actions as part of any agreement with the Township Defendants. The fact that the attack took place after a Planning Board meeting is not enough to raise the inference that the attack was part of a larger plot, as the Amended Complaint makes no allegation that the members of the Planning Board did anything to encourage, facilitate or permit this physical attack by Fox and Gibson. As in <u>Twombly</u>, the alleged grounds upon which the civil conspiracy charge rests will not support the claim of civil conspiracy as alleged. At most, the Amended Complaint may state a claim for conspiracy to assault of which Gibson and Fox were the members. Consequently, the Court concludes that Plaintiffs have not plausibly alleged that Defendants Gibson and Fox entered into a conspiracy with the Township Defendants.

2. <u>State Action and §§ 1983 and 1985(a)</u>

11

Defendants move to be dismissed from Plaintiffs' §§ 1983 and 1985 claims (Counts 4, 5, 6, and 8), on the grounds that Plaintiffs have not alleged that either of them took any action under color of state law.  Plaintiffs respond that by alleging that Defendant Gibson acted in concert with the Township Defendants, they have sufficiently alleged that his actions are subject to liability under §§ 1983 and 1985.

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'" Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983).  Additionally, § 1985(3)[4] provides a remedy to those injured by conspiracies formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . ."  42 U.S.C. § 1985(3).  A civil rights conspiracy claim under Section 1985(3) must be based on invidious, class-based discrimination, such as rase-based denial of equal protection.  Griffin v.

---

[4] The Plaintiffs do not specifically state what subsection of § 1985 on which they rely for relief, but the Court finds nothing in the Amended Complaint to suggest that they allege Defendants conspired to prevent an officer from performing duties (§ 1985(1)) or to obstruct justice within a court (§ 1985(2)), and as Plaintiffs have alleged that the purpose of Defendants' conspiracy was to "deprive Plaintiffs of their constitutionally protected property interest", the Court interprets Plaintiffs to seek relief under § 1985(3).  Am. Compl. ¶ 151.

Breckenridge, 403 U.S. 88, 102 (1971). Plaintiffs seeking relief for violation of the Fourteenth Amendment under either statute must allege that the defendants acted under color of state law, or that the action was, in some sense, chargeable to the state. Lugar, 457 U.S. at 936 (stating that "the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments") (internal quotations omitted); United Broth. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 838 (1983) (holding that a claim under § 1985(3) for violation of First and Fourteenth Amendment rights requires state action).

    The Third Circuit has stated that "[a] person may be found to be a state actor when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999). Plaintiffs have not alleged that Defendants Gibson or Fox were state officials, or that their conduct was inherently chargeable to the state. Thus, the only way Plaintiffs can allege state action on the part of these private Defendants is to allege the existence of a conspiracy between the Moving Defendants and state officials. "Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a

13

constitutional right acts 'under color of state law' for purposes of § 1983." Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998).

Furthermore, Plaintiffs fail to allege, as required by § 1985(3), that they were the victims of invidious class-based deprivation of equal protection, requiring dismissal of Count 8.

The Court has already found that Plaintiffs have not sufficiently alleged the existence of a conspiracy between the Moving Defendants and the Township Defendants. Consequently, the Court concludes that Plaintiffs have not alleged that the Moving Defendants acted under color of state law, and the Court must, therefore, dismiss Counts 4-6 and 8 as to these Defendants.

### 3. Counts 1 and 2 as to Defendant Fox

Defendant Fox moves to dismiss herself from the first two counts of the Complaint, which allege violation of the New Jersey RICO statute, N.J. Stat. Ann. § 2C:41-2(c) and RICO conspiracy under § 2C:41-2(d). To state a claim for state RICO violation, Plaintiffs must allege

> 1. one or more persons (the defendants); 2. employed by or associated with the enterprise; 3. an enterprise engaged in or affecting [commerce in New Jersey]; 4. defendants participating in the conduct of such enterprise's affairs; 5. participation through a pattern of racketeering activity; 6. evidenced by at least two related predicate acts.

Maxim Sewerage Corp. v. Monmouth Ridings, 273 N.J. Super 84, 95 (L. Div. 1993).

14

The Court finds that Plaintiffs have not alleged that Defendant Fox was employed by or associated with an enterprise engaged in or affecting commerce in New Jersey.  Plaintiffs argue that they have sufficiently alleged that Defendant Fox was associated with either the enterprises of the Quinton Township Committee, the Quinton Township Planning Board, or the group of five individual defendants, yet the only basis for this conclusory allegation is that Fox assaulted Mr. Warren after a Planning Board meeting.  This does not suffice to show that Fox was employed by or associated with the Committee, the Board, or the five individual defendants as required by N.J. Stat. Ann. § 2C:41-2(c), supra.  The Court has already concluded that Plaintiffs have not sufficiently alleged the existence of any agreement between Defendant Fox and the Township Defendants (beyond mere legal conclusions), and thus an essential element of RICO conspiracy under § 2C:41-2(d) is absent.  Consequently, the Court concludes that Plaintiffs have not stated a claim against Defendant Fox under Counts 1 and 2.

   4.   Civil Conspiracy

Count 3 alleges that all Defendants engaged in a civil conspiracy to commit the various unlawful acts alleged elsewhere in the Amended Complaint.  The Court has concluded that Plaintiffs have failed to state a plausible claim for conspiracy between Defendant Fox and the Township Defendants.  Thus, the

15

Court will dismiss Defendant Fox from any claim to conspiracy with the Township Defendants.

### 5. Tortious and Intentional Interference

Counts 9 and 10 allege that Defendant Fox committed tortious interference with Plaintiffs' prospective economic advantage (Count 9) and intentional interference with Plaintiffs' prospective economic advantage (Count 10).  The New Jersey Supreme Court has stated that the claims are used "interchangeably" and contain the same elements.  <u>Printing Mart-Morristown v. Sharp Elec. Corp.</u>, 116 N.J. 739, 744 (1989).  Those elements are,

> that a plaintiff was in "pursuit" of business. Second, the complaint must allege facts claiming that the interference was done intentionally and with "malice."  Third, the complaint must allege facts leading to the conclusion that the interference caused the loss of the prospective gain. . . .  Fourth, the complaint must allege that the injury caused damage.

<u>Id.</u> at 751-52.  The Third Circuit has interpreted <u>Printing Mart-Morristown</u> to include a fifth element.

> Under New Jersey law, the five elements of a claim of tortious interference with a prospective business relationship are: (1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) <u>the defendant's knowledge of that expectancy</u>, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.

16

Fineman v. Armstrong World Industries, Inc., 980 F.2d 171, 186 (3d Cir. 1992) (emphasis added) (citing Printing Mart-Morristown, 116 N.J. at 751-52 and Restatement (2d) of Torts § 766B).

Thus, as the Court has already concluded that the acts taken by the other Defendants are not chargeable to Defendant Fox via conspiracy, the only wrongful act Plaintiffs have alleged against Defendant Fox was that she battered Plaintiff Ed Warren outside a Planning Board meeting. Plaintiffs have not alleged that Defendant Fox knew anything about Plaintiffs expectations of economic benefit, that Defendant Fox's battery interfered with that expectation in any way, or that there was any increased probability of receiving any lost economic advantage in the absence of Defendant Fox's battery. Thus, the Court will dismiss Counts 9 and 10 as to Defendant Fox.

    6. Trade Libel and Commercial Disparagement

Under Count 11, to state a claim for trade libel and commercial disparagement under New Jersey law, a plaintiff must allege facts to show "the publication of matter derogatory to plaintiff's business in general of a kind calculated to prevent others from dealing with plaintiff or otherwise to disadvantageously interfere with plaintiff's relations with others." Mayflower Transit, LLC v. Prince, 341 F. Supp. 2d 362, 378 (D.N.J. 2004); Patel v. Soriano, 848 A.2d 803, 835 (N.J. Super. App. Div. 2004).

17

Defendant Gibson has not moved to dismiss Count 11, while Defendant Fox has so moved.

The only argument Plaintiffs make for denying Defendant Fox's motion to dismiss Count 11 as to Defendant Fox is that Fox's participation in the conspiracy renders her liable for the allegedly libelous statements attributable to Defendant Gibson. As the Court has already concluded that Plaintiffs have not stated a claim for conspiracy in this regard, the Court will grant Defendant Fox's motion to dismiss Count 11.

### 7. Negligence

Count 14 alleges that Defendants negligently published false statements that plaintiff were operating in violation of laws, ordinances and their soil removal permit. Am. Compl. ¶¶ 187-88.

Defendant Gibson moves to dismiss Count 14, as the only negligent conduct Plaintiffs have alleged he has taken is based on the same conduct on which Plaintiffs base their Trade Libel and Commercial Disparagement claims. Defendant Gibson argues that, under Dairy Stores, Inc. v. Sentinel Pub. Co., Inc., 191 N.J. Super. 202, 217 (L. Div. 1983), a plaintiff cannot state a claim for negligence based on the same facts as one for libel or product disparagement. In Dairy Stores, the Law Division, applying the reasoning of Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 564 (1955), concluded that "a party who claims that its reputation has been damaged by a false statement cannot circumvent the strictures of the law of defamation or of

18

product disparagement by labeling its action as one for negligence." Dairy Stores at 217.

Plaintiffs oppose this argument by claiming that the holding does not apply because the fault standard in a defamation suit by a non-public figure is negligence, and that therefore Plaintiffs' independent negligence count is appropriate. Citing The Florida Star v. B.J.F., 491 U.S. 524, 539 (1989). The Court finds this argument to be inapplicable. The holding of Dairy Stores did not rely on the appropriate fault standards, but rather was concerned with the privilege defenses available to a libel or defamation defendant that are not available under negligence. The Law Division concluded that libel privilege defenses account for important public policy considerations that are absent in negligence actions, and that, therefore, a plaintiff should not be free to plead its way around such limitations on speech-related liability by adding a negligence count. Consequently, the Court will grant Defendant Gibson's motion to dismiss Count 14.

## IV. CONCLUSION

The Court has concluded that, because Plaintiffs have failed to state a claim for conspiracy between the Township Defendants and Defendants Gibson and Fox, the only actions chargeable to the Moving Defendants are those each is specifically alleged to have taken. Therefore, the Court will grant Defendant Fox's motion to

be dismissed from Counts 1-6 and 8-11. The Court will likewise grant Defendant Gibson's motion to be dismissed from Counts 4-6 and 8. Finally, the Court has concluded that Plaintiff's negligence claims as to Defendant Gibson are based on the same facts as their Trade Libel and Commercial Disparagement claim, and that the Court must therefore dismiss Defendant Gibson from Count 14.

Defendant Fox requests that the Court's dismissal be with prejudice because the Plaintiffs have already amended their Complaint once without successfully curing these pleading deficiencies. However, the Court concludes that, as Defendant Fox has not identified any meaningful prejudice she would suffer by an effectively amended pleading, so long as any proposed amended pleading cures the insufficiencies identified in this Opinion, Plaintiffs should not be foreclosed from seeking to amend their Complaint. Therefore, the Counts dismissed in this Opinion are without prejudice. The accompanying Order will be entered.

**September 12, 2011**      **s/ Jerome B. Simandle**
Date                         JEROME B. SIMANDLE
                             U.S. District Judge

20