IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THREASTON WARREN, JR., et al.,

          Plaintiffs,

    v.

ALBERT FISHER, III, et al.,

          Defendants.

Civil Action
No. 10-5343 (JBS/KMW)

**OPINION**

APPEARANCES:

Kerri E. Chewning, Esq.
Lloyd Freeman, Esq.
Joseph A. Martin, Esq.
John Patrick Kahn, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033
    Counsel for Plaintiffs

Michael Paul Madden, Esq.
Patrick J. Madden, Esq.
MADDEN & MADDEN, PA
108 Kings Highway East, Suite 200
PO Box 210
Haddonfield, NJ 08033
    Counsel for Defendants Albert Fisher III, Robert Howell &
    Joseph Hannagan, Jr.

**SIMANDLE**, Chief Judge:

# I.  INTRODUCTION

Before the Court is a motion for judgment on the pleadings and a motion for partial summary judgment brought by Defendants Albert W. Fisher, III, Joseph J. Hannagan, Jr., and Robert Howell. [Docket Item 85.] This matter arises out of a complex dispute between Plaintiffs Threaston E. Warren, Jr., and Marjorie

K. Warren, who own land in Quinton, New Jersey, and Plaintiff Continental Aggregate Corp., LLC, which operates a sand mining operation on the Warrens' land, and Defendants Fisher, Hannagan and Howell ("Township Defendants"), who each held different positions of authority with the Township of Quinton. Defendant Michael Gibson is a private citizen who allegedly conspired with the Township Defendants to drive Continental out of business or out of Quinton. Plaintiffs allege that the Defendants conspired to drive Continental out of business by denying Plaintiffs' land-use application and attempting to change local ordinances to disrupt Continental's expansion plans, among other actions.

Plaintiffs bring equal protection and substantive due process claims under Fourteenth Amendment to the U.S. Constitution, via 42 U.S.C. § 1983 (Counts I & II); a First Amendment retaliation claim, under § 1983 (Count III); a claim for conspiracy to interfere with civil rights, under § 1983 (Count IV); state-law tort claims (Count V, trade libel/commercial disparagement; Count VI, assault and battery[1]; Count VII, trespass to land[2]); and a restatement of claims against John Doe defendants (Count VIII).

The Township Defendants now move for judgment on the pleadings, pursuant to Rule 12(c), Fed. R. Civ. P., as well as summary judgment on certain counts, pursuant to Rule 56(a), Fed.

---

[1] Count VI names only Defendant Gibson.

[2] Count VII names only Defendant Hannagan.

R. Civ. P. The key inquiries for the Court are: (1) whether the Plaintiffs sufficiently pled that they were treated differently than similarly situated mining operations in Quinton Township, (2) whether the Defendants' conduct shocks the conscience, and (3) whether Plaintiffs have pled a causal connection between protected First Amendment activity and alleged retaliation. Because the Court answers these questions in the negative, the Court need not reach issues of absolute or qualified immunity to enter judgment for the Defendants. Plaintiffs will be afforded one final opportunity to file a motion to amend the Complaint, to cure the pleading deficiencies as to the Equal Protection claim and civil conspiracy claim detailed below.

## II.  Background

### A. Facts

Plaintiffs Threaston "Ed" Warren and Marjorie Warren own approximately 170 acres of land in Quinton, New Jersey, and hold a soil removal permit for the property.[3] [Second Am. Compl. ¶¶ 14, 16.] The Warrens lease portions of the property to Plaintiff Continental, which conducts a sand mining operation using the Warrens' permit. [Id. ¶¶ 15-18.] Trouble arose in July 2007 when

---

[3] The facts are drawn from the Second Amended Complaint. [Docket Item 77.] The Court previously discussed some of the facts of this case in an opinion dismissing certain claims in the First Amended Complaint against Defendant Gibson. See Warren v. Fisher, No. 10-5343, 2011 WL 4073753, at *1-*2 (D.N.J. Sept. 12, 2011). In the same opinion, the Court dismissed claims against Defendant Sharon Fox, who is not named in the Second Amended Complaint.

Plaintiffs applied to the Quinton planning board for permission to expand their existing soil removal activities on the property and to install screening and washing equipment, known as a "wash plant." [Id. ¶ 29.]

Plaintiffs allege that the Township Defendants, with the help of Defendant Gibson, conspired to use their positions of power in the Township of Quinton to interfere with Continental's business in an effort to drive them out of business or, at least, out of Quinton. The Township Defendants, with Mr. Gibson, allegedly called themselves the "Cool Run Gang" and met privately to discuss Plaintiffs' mining operations. [Id. ¶ 21.] Plaintiffs allege that Defendants Fisher and Howell, as members of the town's planning board, denied Plaintiffs' land use application arbitrarily and appointed Defendant Hannagan to the position of "Official Pit Inspector" to harass Plaintiffs and conduct "an inordinate number of inspections" of the property and Continental's operations. [Id. ¶¶ 25-27.] Plaintiffs also allege the Defendants Fisher and Howell attempted to change town ordinances "to legislate Plaintiffs out of business," and that Defendant Fisher, as mayor, "packed" the planning board with individuals unsympathetic to Continental's interests. [Id. ¶ 2.] Plaintiffs allege that Defendant Gibson made multiple false, written and oral allegations of wrongdoing against Plaintiffs to lay the groundwork for the Township Defendants to take official action against Plaintiffs. [Id. ¶ 24.]

4

On July 16, 2007, Plaintiffs submitted their land-use application to the Quinton planning board, requesting "preliminary site plan approval and conditional use approval to allow Plaintiffs to expand existing soil removal activities" and to install a wash plant to process the extracted soil prior to shipping the soil off of the premises. [Id. ¶ 29.] Plaintiffs assert that processing the soil in a wash plant is a "usual and customary -- and, indeed, a necessary -- part of a sand mining operation." [Id.] Plaintiffs appeared before the planning board in support of their application on a handful of occasions, and presented "uncontested testimony" from a soil mining expert and a geologist in support of their plans.[4] The board determined that a wash plant was a "principal use" of the property as opposed to an "accessory use" to the existing soil removal operations, and denied the application for the wash plant. [Id. ¶ 32.] At a later hearing, the board denied Plaintiff's application, without considering its merits, because Plaintiffs did not have a mining license for the property. [Id. ¶ 35.] Plaintiffs assert that the lack of a mining license is "not a legally cognizable reason for the Planning Board to deny Plaintiffs' Application." [Id. ¶ 39.]

Plaintiffs assert that the denial of their application was part of a larger conspiracy against them and assert facts relating to Defendants' alleged hostility toward them. For

---

[4] The planning board conducted hearings on the application on October 9, 2007, December 11, 2007, and January 8, 2008. [Id. ¶ 30.]

example, Plaintiffs assert that Defendant Howell, at a Township Committee meeting, told a representative of Continental: "I'll never shake your hand. I don't want you around here. I don't like you or what you are doing in this town." [Id. ¶ 41.] Plaintiffs also assert that Defendant Howell telephoned Mr. Warren at home, "screaming profanities and vulgarities at him." [Id. ¶ 45.] Plaintiffs allege that Defendant Gibson punched Mr. Warren in the face after a planning board meeting on April 14, 2009, and screamed profanities at him. [Id. ¶ 92.]

Plaintiffs filed a Complaint in Lieu of Prerogative Writ in New Jersey Superior Court, seeking review of the planning board decision. [Id. ¶ 44.] On December 22, 2008, the court ruled that the planning board's decision was "arbitrary and capricious" and that there was no factual support for the contention that a wash plant was a "principal use." [Id. ¶¶ 48-49.] Plaintiffs assert that Defendants were "emboldened" by the adverse court decision and "continue[d] implementing their unlawful agreement." [Id. ¶ 54.]

Defendant Gibson began writing letters and other correspondence to various town and county officials alleging that Plaintiffs were not in compliance with their soil removal permit or town ordinances. [Id. ¶¶ 59-61.] Plaintiffs assert that all of these statements were demonstrably false and were "made intentionally, maliciously, and/or negligently" in furtherance of "Defendants' conspiracy." [Id. ¶ 59.] Plaintiffs assert that the

Township Defendants used Mr. Gibson's allegations as the pretext to take actions against Plaintiffs, including appointing Defendant Hannagan to be an "Official Township Pit Inspector," a position that Plaintiffs allege did not exist previously in Quinton and for which Mr. Hannagan had no experience or training.[5] [Id. ¶¶ 62, 66-69.] From April 4, 2006, to November 6, 2009, Plaintiffs claim they were subject to approximately 40 site inspections by the town. They assert that site inspections in Quinton typically occurred on a biannual basis and that two other mining operations in Quinton did not receive "nearly the same number of inspections or scrutiny." [Id. ¶¶ 64, 86, 88.] Plaintiffs assert the inspections cost Continental "tens of thousands of dollars." [Id. ¶ 63.]

Plaintiffs also claim that Defendant Fisher introduced an amendment to a Quinton zoning ordinance to "delete soil removal as a conditionally permitted use" in an effort to drive Continental out of business. [Id. ¶¶ 77-78] Defendant Fisher proposed the amendment on three separate occasions in 2008 and 2009, but the amendment never passed. [Id. ¶¶ 78-80.] Plaintiffs assert that Defendant Howell admitted during a planning board hearing that he had "previously proposed an ordinance specifically to target Continental and detrimentally affect its mining operations." [Id. ¶ 81.] No such ordinance passed.

---

[5] Defendants assert that, in fact, a town ordinance that predated the present controversy provided for the position of pit inspector. [Def. Mot. Br. at 16.]

7

When vacancies opened up on the planning board, Defendant Fisher appointed individuals who allegedly were unsympathetic to Continental's interests. [Id. ¶¶ 95-97.] To fill one vacancy, after Defendant Howell resigned, Mr. Fisher appointed Defendant Hannagan to the board. [Id. ¶¶ 97-98.] Mr. Fisher also appointed two other individuals, Jane Turner and Joanne Macucchio, to the planning board, "both of whom were known outspoken critics of Continental and mining operations in Quinton . . . ." [Id. ¶ 99.]

Plaintiffs assert that Defendant Hannagan, on October 7, 2009, entered onto a portion of the Warrens' property not covered under the soil removal permit, and without consent, stuffed a soil sample in a plastic bag and removed it from the premises. [Id. ¶ 101.] Mr. Hannagan allegedly told representatives of Continental that "they" - purportedly referring to Defendants Fisher and Howell - "want me to do it now; I don't need any authorization since I am an official and if Ed Warren doesn't like it he can sue me." [Id. ¶ 102.] Plaintiffs suggest that the purpose of taking soil was for Defendants to show, somehow, that Continental was mining the soil illegally. [Id. ¶ 103.] Mr. Warren filed a criminal complaint against Mr. Hannagan, but agreed to withdraw the complaint if the town removed Mr. Hannagan as the official pit inspector. [Id. ¶ 105.] The Township Defendants agreed. [Id.]

**B. Procedural history**

Plaintiffs initiated this action in the Superior Court of New Jersey, Salem County, and Defendants removed the action, pursuant to 28 U.S.C. § 1446, as the Complaint alleged violations of federal law. [Docket Item 1.] Plaintiffs amended their complaint, whereupon Defendants Gibson and Fox filed motions to dismiss. [Docket Items 28 & 31.] The Court dismissed without prejudice all claims against Ms. Fox and five counts against Mr. Gibson, because Plaintiffs failed to state a claim for conspiracy against the two moving Defendants. [Docket Item 47 at 19-20.] Plaintiffs moved to file a Second Amended Complaint against the Township Defendants and Defendant Gibson [Docket Item 70], which Magistrate Judge Williams granted upon finding that Plaintiffs had cured the deficiencies of the conspiracy claim against Defendant Gibson. [Docket Item 76.]

In November 2011, Plaintiffs and Quinton Township entered into a settlement agreement. [Docket Item 85-1, Statement of Material Facts on Partial Mot. for Summary Judgment ("SMF") ¶ 3.] The agreement acknowledged that Quinton undertook an independent study of wet mining operations in the Township and proposed amendments to its Land Use Ordinance in a manner beneficial to Plaintiffs, including permitting excavation and removal of a greater volume of sand than was previously permitted under the ordinance. [Id. ¶ 4] Plaintiffs agreed to dismiss all claims against Quinton Township, but preserved their rights to pursue claims against the Township Defendants and Defendant Gibson. [Id.

9

¶ 5.] Township Defendants assert that the Township signed a Reimbursement Agreement that "provides in essence that Plaintiffs shall not seek the recovery of damages against the individual defendants, to the extent that those damages will be ultimately paid by Quinton[.]" [Id. ¶ 9.] Plaintiffs assert, to the contrary, that the settlement agreement reserved all claims against the Township Defendants, including those claims that could result in damages being paid by the Township. [Docket Item 87, Pl. Opp'n at 15.]

The Township Defendants brought this motion for judgment on the pleadings. [Docket Item 85.] The Defendants argue that they are entitled to both absolute and qualified immunity for actions taken as Township officials, and, in addition, that Plaintiffs fail to state a claim for relief under the U.S. Constitution. [Def. Mot. Br. at 1-3.] Defendants also argue that the state-law tort claims must be dismissed because Plaintiffs failed to comply with the notice requirements of the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:8-8. [Id. at 3, 36.]

Because Defendants rely on matters outside the pleadings to support some of their arguments, the motion also presents some claims that must be analyzed as motions for summary judgment. Specifically, Defendants rely on matters outside the pleadings related to: (1) the pit inspector provision of the soil removal ordinance and the appointment of Defendant Hannagan to that position [Id. at 16 n.5, 23 n.6], (2) the settlement agreement

releasing Quinton Township from liability [Id. at 24-25 n.8], and
(3) Plaintiffs' failure to serve a Tort Claim Notice [Id. at 35
n.11.] Those arguments by Defendants, and any counts dependant
upon the facts contained in the outside material, must be treated
in the context of a summary judgment motion.

The Court will begin by addressing claims for judgment on
the pleadings, and then consider claims for partial summary
judgment.

### III. Standard of review

Where a party moves for judgment on the pleadings, pursuant
to Rule 12(c), Fed. R. Civ. P., alleging that the complaint fails
to state a claim upon which relief can be granted, the court
applies the same standards as under Rule 12(b)(6). Bethea v.
Roizman, No. 11-254, 2012 WL 4490759, at *5 (D.N.J. Sept. 27,
2012) (citing Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428
(3d Cir. 1991) and Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d
Cir. 2004)).

Under Rule 12(b)(6), the court must "accept all factual
allegations as true, construe the complaint in the light most
favorable to the plaintiff, and determine whether, under any
reasonable reading of the complaint, the plaintiff may be
entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116,
120 (3d Cir. 2012). The complaint must contain "sufficient
factual matter, accepted as true, to state a claim to relief that
is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations that are no more than legal conclusions are not entitled to the assumption of truth. Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if, based on the evidence in the record, a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the suit. Id. The court will view evidence in the light most favorable to the non-moving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

**IV. Judgment on the Pleadings**

    **A. Law of the case & estoppel**

As an initial matter, Plaintiffs argue that Magistrate Judge Williams, by permitting the Second Amended Complaint to be filed, already determined that "Plaintiffs' allegations regarding the conspiracy to violate Plaintiffs' constitutional rights" is "plausible." [Pl. Opp'n at 8.] Plaintiffs argue that Magistrate Judge Williams's determination that the Second Amended Complaint was sufficiently pled is the "law of the case" and binding on this Court. [Id. at 7.]

This argument may be dispensed with quickly. Magistrate Judge Williams, in her June 28 Order, considered "only . . . whether Plaintiffs have corrected the deficiencies noted in Judge Simandle's September 12th Opinion and Order, as to Defendant Michael Gibson . . . ." [Docket Item 76 at 1-2.] Specifically, the court examined only whether Plaintiffs alleged facts sufficient to suggest (1) that an agreement plausibly existed between Defendant Gibson and the Township Defendants, and (2) that Defendant Gibson plausibly acted under color of state law. [Id. at 5-6.] Magistrate Judge Williams did not consider the sufficiency of the pleadings as to the Township Defendants.

Furthermore, a "defendant's right to have a district judge decide any dispositive motion on a de novo basis must be protected," even if a magistrate judge's decision permitted amendments to a complaint and the complaint later became subject to a motion to dismiss. Florian Greenhouse, Inc. v. Cardinal IG

Corp., 11 F. Supp. 2d 521, 525 (D.N.J. 1998) (citing 28 U.S.C. §
636(b)(1)(A) and L. Civ. R. 72.1(c)(2)).

Plaintiffs further argue in a footnote that Township
Defendants must be estopped from seeking judgment on the
pleadings because they did not oppose the motion to amend. [Pl.
Opp'n at 8 n.1.] The Court does not agree. Defendants' assertions
that Plaintiffs fail to state claims for relief is not
inconsistent with their failure to oppose the motion to amend,
and Defendants do not waive their right to contest the
sufficiency of a complaint when they fail to oppose a motion to
amend. See Monaco v. City of Camden, 366 F. App'x 330, 334 n.3
(3d Cir. 2010) (rejecting the plaintiff's argument that, because
the defendant failed to raise a statute of limitations argument
to oppose a motion to amend, that it was estopped from later
raising the limitations defense); Larry v. Penn Truck Aids, Inc.,
94 F.R.D. 708, 713-14 (E.D. Pa. 1982) (holding that the defendant
did not waive its right to raise a defense after it failed to
assert the defense in opposition to a motion to amend).

**B. Equal Protection Clause claim (Count 1)**

To state an Equal Protection Clause violation, under a
"class of one" theory, a plaintiff "must allege that (1) the
defendant treated him differently from others similarly situated,
(2) the defendant did so intentionally, and (3) there was no
rational basis for the difference in treatment." Hill v. Borough
of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). See also Vill. of

<u>Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). At the motion to dismiss stage, a plaintiff must allege facts sufficient to make plausible the existence of such similarly situated parties. <u>Perano v. Twp. of Tilden</u>, 423 F. App'x 234, 238 (3d Cir. 2011). To be "similarly situated," parties must be alike "in all relevant aspects." <u>Startzell v. City of Philadelphia</u>, 533 F.3d 183, 203 (3d Cir. 2008).

Plaintiffs claim a violation of the Equal Protection Clause under a "class of one" theory, arguing that Plaintiffs have been intentionally treated differently from others similarly situated at there is no rational basis for the difference in treatment. [Pl. Opp'n at 19; Second Am. Compl. ¶ 118.] Plaintiffs argue that the Second Amended Complaint includes assertions that (1) Continental was subject to "innumerable inspections" and other mining operations were not, (2) Plaintiffs appointed a pit inspector "for the specific purpose of harassing Continental," and (3) Township Defendants intentionally treated Plaintiffs differently because they harbored ill will toward Plaintiffs. [<u>Id.</u> at 20-21.]

Defendants argue that Plaintiffs fail to allege that Continental is "alike in all relevant aspects" to the other mines

15

with which Plaintiffs compare themselves. [Def. Mot. Br. at 28.]
Defendants argue that Plaintiffs do not allege "any facts that
would indicate that these mines were also seeking to expand their
operations, had also sought or received land use approvals
similar to those sought by Plaintiffs, or that these other mines
were not treated with the 'same level of scrutiny' in connection
with their own applications" to the planning board. [Id.]
Defendants suggest that the very fact Continental sought to
expand its mining operations was at least a rational basis for
giving Continental close scrutiny, absent any indication that the
other mines also sought to expand. [Id. at 28-29.]

     The motion for judgment on the pleadings for the Equal
Protection Clause claim must be granted because Plaintiffs allege
no facts to suggest that other mines in Quinton are similarly
situated, i.e., alike in all relevant aspects, to Continental.
Plaintiffs assert facts that they were treated differently from
the other mines, because they were subject to approximately 40
site inspections during a three-and-a-half-year period, whereas
inspections typically occur biannually. [Second Am. Compl. ¶ 86.]
Plaintiffs also assert facts that suggest that Township
Defendants singled out Continental for this treatment, including
statements made by Defendant Howell and the alleged sustained
efforts to thwart Continental's expansion plans. [See, e.g., id.
¶¶ 41, 45, 77-78, 92, 95-97, 102.] But Plaintiffs make no attempt
to allege facts that the other mines were similarly situated to

Continental and that no rational basis existed for the differential treatment. See Hill, 455 F.3d at 239 ("at the very least, to state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated").

Plaintiffs allege no facts about the other mining operations to suggest that differential treatment was unwarranted. There is no suggestion that the various mining operations are similar in kind or scope or impact on the Township. There is no assertion that the other mines sought to expand operations in a similar way to Plaintiffs or had similar matters pending before the planning board, or were treated differently when they did have similar matters before the planning board. There is no assertion that the other mines received approval to use the type of equipment plaintiffs now seek to install. Aside from the fact that other mines exist in the town, the Second Amended Complaint provides no factual detail to suggest that the mines are similarly situated in any aspect, let alone all relevant aspects, to Continental.

The Third Circuit requires plaintiffs to allege at least some facts regarding the similarity of other actors to survive a motion to dismiss on an Equal Protection claim. In Perano, the plaintiff sought to expand his mobile home park, and, in response, the Township of Tilden attempted to amend its zoning ordinances to prevent further development of the park. Perano, 423 F. App'x at 235. The plaintiff sued the township because the

township failed to provide public water, inspected his park
without notice, scheduled a hearing regarding alleged violations,
refused to issue him a license, issued a stop-work order for any
projects in the park because he lacked a license and refused to
issue more building permits. Id. at 236. The plaintiff alleged
that he was treated differently from other similarly situated
residential and commercial developers, but the Third Circuit
affirmed the district court's dismissal of the Equal Protection
Clause claim. Id. at 238-39. "Without more specific factual
allegations as to the allegedly similarly situated parties, he
has not made plausible the conclusion that those parties exist
and they are like him in all relevant aspects." Id. See also
Minatee v. Special Treatment Unit, No. 10-4654, 2011 WL 5873055,
at *8-*9 (D.N.J. Nov. 16, 2011) (holding that a plaintiff, who
was being held as a civilly committed individual pursuant to the
Sexually Violent Predator Act, failed to allege facts regarding
the similarity of other civilly committed individuals who had
been released, and concluded that "absent specific, alleged
facts" as to their similarity, he "failed to raise a right to
relief to a sufficient level of plausibility, as required under
Fed. R. Civ. P. 8(a)" for an Equal Protection claim).

Here, Plaintiffs have alleged no more facts regarding the
other mines' similarity to Continental than the plaintiff did
regarding other developers in Perano. Plaintiffs here allege that
they were treated differently from other mines, as the plaintiff

in Perano alleged he was treated differently from other developers, but Plaintiffs likewise fail to plead any "specific factual allegations as to the allegedly similarly situated parties . . . ." Perano, 423 F. App'x at 238. Without factual assertions that suggest Continental was treated differently than other businesses that are alike in all relevant respects, Plaintiffs do not sufficiently plead a "class of one" and, thus, do not sufficiently plead a violation of the Equal Protection Claus

The Third Circuit again emphasized that plaintiffs must plead facts to show that allegedly similarly situated parties share relevant characteristics, in Mann v. Brenner, 375 F. App'x 232, 238-39 (3d Cir. 2010). There, the plaintiff owner of blighted structures in the City of York merely recited the elements of an Equal Protection claim, claiming that "other citizens" were treated differently, but he did not allege facts regarding "other similarly situated individuals, that is, other property owners of blighted structures in the City of York." Id. at 238. The Third Circuit held that a plaintiff must allege facts that "nudge [his] claims across the line from conceivable to plausible." Id. The Third Circuit affirmed dismissal of the Equal Protection claim. Id.

Here, Plaintiffs refer to two other mining operations, but, as the plaintiff in Mann failed to plead that he was treated differently than similarly situated "property owners of blighted

structures" (as opposed to merely "other citizens"), id., Plaintiffs here fail to plead that they were treated differently from mining operations that shared relevant characteristics with Continental, i.e., mining operations similar in kind or scope or impact on the Township, who were treated differently when they had similar matters pending before the planning board. The facts that Continental sought to expand their activities within the Township and had matters pending before the planning board is at least a rational basis for increased scrutiny of their actions. Consequently, Plaintiffs must assert facts to plausibly suggest that the other mines were treated differently when they shared relevant characteristics with Continental. Merely alleging that other mining operations exist within the town lines does not plausibly suggest that those mines are similar in all relevant aspects to Continental, for purposes of the Equal Protection Clause.

Judgment on the pleadings will be granted without prejudice in favor of Defendants on the Equal Protection Clause claim, and Plaintiffs will have 30 days in which to file a motion seeking leave to file an amended complaint to cure the pleading deficiencies stated herein. See Gaymon v. Esposito, No. 11-4170, 2012 WL 1068750, at *14 (D.N.J. Mar. 29, 2012) (granting a motion for judgment on the pleadings without prejudice and giving the plaintiffs leave to file an amended complaint curing the pleading deficiencies, citing Fletcher-Harlee Corp. v. Pote Concrete

20

Contractors, Inc., 482 F.3d 247, 251-53 (3d Cir. 2007)); see also
In re Nat'l Pool Constr. Co., No. 12-2157, 2012 WL 3277107, at *2
(D.N.J. Aug. 9, 2012) ("before dismissing a complaint under Rule
12(c), 'a district court must permit a curative amendment, unless
an amendment would be inequitable or futile[,]'" quoting Phillips
v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008)); Fed. R.
Civ. P. 15(a)(2) ("The court should freely give leave [to amend]
when justice so requires.").

Because the Court finds the pleading insufficient, the Court
need not address issues raised related to absolute or qualified
immunity related to this Count.

### C. Substantive Due Process claim (Count II)

To state a substantive due process claim under the
Fourteenth Amendment, a plaintiff must allege that the government
deprived him of a fundamental property interest under the
Constitution with conduct that "shocks the conscience." Chainey
v. Street, 523 F.3d 200, 219 (3d Cir. 2008). See also Eichenlaub
v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004) ("whether a
zoning official's actions or inactions violate due process is
determined by utilizing a 'shocks the conscience' test"); United
Artists Theatre Circuit v. Twp. of Warrington, 316 F.3d 392, 394
(3d Cir. 2003) (recognizing that the "shocks the conscience"
standard endorsed in Cnty. of Sacramento v. Lewis, 523 U.S. 833
(1998) superceded the "improper motive" test previously applied
by the Third Circuit). Whether conduct shocks the conscience

depends on the factual context, but "only the most egregious official conduct" qualifies, and the Third Circuit has stated that "this test is designed to avoid converting federal courts into super zoning tribunals." Eichenlaub, 385 F.3d at 285. To shock the conscience, "the complained of behavior must be coupled with allegations of corruption, self-dealing, unconstitutional 'taking,' ethnic bias, or interference with otherwise constitutionally protected activity." Toll Bros. Inc. v. Twp. of Moorestown, No. 10-4843, 2011 WL 2559507, at *8 (D.N.J. June 27, 2011) (citing Eichenlaub).

In Eichenlaub, the Third Circuit affirmed dismissal of a substantive due process claim brought by developers who sought to develop their property and met with great resistance from the township. 385 F.3d at 276-77, 286. The plaintiffs alleged "that zoning officials applied subdivision requirements to their property that were not applied to other parcels; that they pursued unannounced and unnecessary inspection and enforcement actions; that they delayed certain permits and approvals; that they improperly increased tax assessments; and that they maligned and muzzled" the plaintiffs. Id. at 286. The Third Circuit, finding no allegation of corruption or self-dealing, no virtual "taking,"[6] no bias against an ethnic group, and no interference

_____

[6] By way of example and contrast, the Third Circuit cited Conroe Creosoting Co. v. Montgomery Cnty., 249 F.3d 337 (5th Cir. 2001), as illustrating a taking that shocked the conscience. In that case, town officials "fraudulently converted a tax levy for a $75,000 deficiency into an unauthorized seizure and forced sale

with otherwise constitutionally protected activity,[7] concluded that "these complaints are examples of the kind of disagreement that is frequent in planning disputes." Id.

Defendants argue that the substantive due process claim should be dismissed because the Second Amended Complaint does not include any allegations that the complained-of conduct included self-dealing, unconstitutional taking, ethnic bias or interference with otherwise constitutionally protected activity. [Def. Mot. Br. at 31.] Plaintiffs respond that the allegations demonstrate more than disagreement with the planning board decisions and reveal "continued, targeted harassment toward the Warrens based on personal animus and improper motive, . . . with the objective of depriving Plaintiffs of their constitutionally protected property right in their Soil Removal Permit and to alter existing legislation to outlaw soil removal as a conditionally permitted use for Plaintiffs' property." [Pl. Opp'n at 17.] Plaintiffs suggest that the Defendants' "unrelenting attempts" to interfere with Continental's business are "conscience shocking." [Id. at 17-18.]

---

and destruction of an $800,000 ongoing business." Eichenlaub, 385 F.3d at 285.

[7] The Third Circuit spoke of "otherwise constitutionally protected activity" in the context of a case in which municipal defendants selectively closed a plaintiff's medical office for the purpose of blocking the provision of constitutional abortion services. Id. at 285 (citing Assocs. in Obstetrics & Genecology v. Upper Merion Twp., 270 F. Supp. 2d 633 (E.D. Pa. 2003)).

The conduct alleged here is not materially different from that in Eichenlaub. Here, as there, Plaintiffs complain that their applications before town committees were delayed and denied, that the municipal defendants subjected them to unannounced and unnecessary inspections, that defendants treated them differently from others, that the defendants maligned them and that defendants retaliated against them for exercising First Amendment rights. Plaintiffs allege that Defendants acted out of "personal animus and improper motive" [Pl. Opp'n at 17] but allege no ethnic bias and the Third Circuit has abandoned the "improper motive" standard. See United Artists Theatre Circuit, 316 F.3d at 394. While Plaintiffs plead a sustained effort on the part of the Township Defendants to prevent Plaintiffs from expanding their operations, Plaintiffs do not allege facts to support claims of corruption or self-dealing.

Similarly, Plaintiffs do not allege facts to support improper interference with constitutionally protected activity on the property, such as abortion services, or a virtual taking. It bears mention that, in fact, Plaintiffs have not been deprived of the use of their land, and, through the process of challenging the Township's actions with this litigation, reached an agreement with the Township to expand soil removal activities on their land and to change local ordinances in manners beneficial to Plaintiffs. Failed attempts by town officials to amend local ordinances, even if animated by improper motives, do not affect

Plaintiffs' fundamental property rights and do not offend the substantive due process rights of Plaintiffs. Neither does denying an land-use application, even if the Township Defendants acted with improper motives. See id. at 402 ("Land-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives.")

Defendants' conduct is not so egregious that it shocks the conscience, and therefore the Court will grant Defendants' motion for judgment on the pleadings on the substantive due process claim.

### D. First Amendment retaliation (Count III)

Plaintiffs allege that when they sought review of the planning board's decision in New Jersey Superior Court, they were exercising their right to redress, guaranteed by the First Amendment of the U.S. Constitution, made applicable to the states by the Fourteenth Amendment. [Second Am. Compl. ¶¶ 132-135.] Plaintiffs alleges that the Defendants "responded to such constitutionally protected activity by retaliating against Plaintiffs . . . ." [Id. ¶ 136.]

To state a retaliation claim under 42 U.S.C. § 1983, predicated on the First Amendment, the plaintiffs must allege "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person

of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). To state the "requisite causal connection," a plaintiff must plead either "(1) an usually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Id. (citing Krouse v. Am. Sterilizer Co., 125 F.3d 494, 503-04 (3d Cir. 1997).

Defendants argue that the pleading is insufficient because Plaintiffs fail to state a causal connection between the protected activity and the retaliatory action and because Defendants' conduct would not deter a person of ordinary firmness from exercising their rights of redress. [Def. Mot. Br. at 32-33.] Plaintiffs respond that the Township Defendants "continued their harassing attacks with greater ferocity after the Superior Court's decision . . . ." [Pl. Opp'n at 18.] Plaintiffs also argue that their resolve to seek expansion should not suggest that person of ordinary firmness would not be deterred by Defendants' actions. [Id. at 19.]

The Court finds that Plaintiffs fail to plead a causal connection between the protected activity and the alleged retaliation, and thus judgment on the pleadings will be entered in favor of Defendants on the First Amendment retaliation claim.

The Second Amended Complaint explicitly pleads that "Defendants' unlawful agreement and conspiracy" predated the Plaintiffs' filing in state court,[8] and that, after the adverse decision by the state court, the Township Defendants "continue[d] implementing their unlawful agreement." [Second Am. Compl. ¶ 54 (emphasis added).] Plaintiffs omit several relevant dates from the Second Amended Complaint, such as the date that Plaintiffs exerted their right to seek redress in state court, but they plead that the planning board's final decision was issued on January 8, 2008. [Id. ¶ 35.] By that time, the Township Defendants allegedly had been acting adversely to Plaintiffs for months. [Id. ¶¶ 30-32.] Also, Defendant Howell allegedly refused to shake a Continental representative's hand and said "I don't want you around here" at a meeting "held during the winter holiday season," which presumably predated the January 8 denial of Plaintiffs' application. [Id. ¶ 41.] The pleadings suggest that Township Defendants' antipathy toward Plaintiffs' existed wholly independent of Plaintiffs' filing a complaint in state court.

Plaintiffs argue that Second Amended Complaint states that the "harassing attacks" continued "with greater ferocity after the Superior Court's decision . . . ." [Pl. Opp'n at 18.] Indeed, Plaintiffs plead that Defendants "were angry about the Court's

---

[8] Second Am. Compl. ¶ 34 (describing the denial of the initial land-use application as furthering the agreement and conspiracy).

decision and only became emboldened to continue implementing their unlawful agreement" and that Defendants' attacks "escalated" after the state court decision. [Second Am. Compl. ¶¶ 54, 57.] But this argument is not persuasive, because it expressly links Defendants' conduct to the adverse, substantive decision by the state court, not the Plaintiffs' exercise of any First Amendment rights. The facts are not unusually suggestive of a temporal proximity between the filing of a complaint in state court and Defendants' conduct. Rather, the pattern of antagonism, which began in 2007, continued after the state court decision because the Township Defendants, whatever their motivation, had not yet succeeded in preventing Plaintiffs from expanding their operations.

### E. Civil Conspiracy under § 1983 (Count IV)

To state a civil conspiracy claim under § 1983, the plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." Perano, 423 F. App'x at 239. However, a § 1983 conspiracy claim "only arises when there has been an actual deprivation of a right." Id. See also Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000) ("The rule that civil conspiracy may not exist without an underlying tort is a common one."); Page v. City of Trenton, No. 04-874, 2005 WL 3588477, at *5 (D.N.J. Dec. 29, 2005) (holding that claims for civil conspiracy, alleging deprivation of constitutional rights, "require a showing that an

underlying constitutional right has been violated to support the allegations of a conspiracy") (citing <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 372 (1979)).

Here, Plaintiffs have failed to state a claim for any violations under the U.S. Constitution, and, as described below, cannot sue Defendants under the New Jersey Tort Claims Act. Therefore, Plaintiffs' conspiracy claim must fail.

Because the Court will afford Plaintiffs the opportunity to amend the pleadings as to the Equal Protection Clause claim, as discussed <u>supra</u> Part IV.B, the judgment on the pleadings as to the conspiracy count will be granted without prejudice.

## V. Summary Judgment

The only remaining claims against the moving Defendants are the state-law tort claims of trade libel/commercial disparagement (Count V) and trespass to land (Count VII, filed only against Defendant Hannagan). Defendants argue they are entitled to summary judgment because "Plaintiffs never served a Tort Claim Notice upon either the Township of Quinton, or any of the individual defendants." [SMF ¶ 10.] The New Jersey Tort Claims Act states that a "claimant shall be forever barred from recovering against a public entity or public employee if: a. He failed to file his claim with the public entity within 90 days of accrual of his claim . . . ." N.J. Stat. Ann. § 59:8-8. Plaintiffs admit they did not serve notice and do not argue in their opposition papers that the tort claims can survive a motion

of summary judgment. [Pl.'s Resp. to the Twp. Def.'s Statement of Material Facts ¶ 10.] Where Plaintiffs, to their credit, concede that Plaintiffs filed no Tort Claims Notice, there is no plausible basis on which Plaintiffs can prevail on their state tort claims against these officials. Therefore, the Court will grant the motion for summary judgment on Counts V & VII.

## VI.  Conclusion

Defendants' motion for judgment on the pleadings will be granted without prejudice as to the Equal Protection and civil Conspiracy claims; Plaintiffs will have 30 days to file a motion seeking leave to amend the complaint to cure pleading deficiencies. Defendants' motion for judgment on the pleadings will be granted with prejudice as to the substantive due process and First Amendment retaliation claims, because any attempted amendment would be futile. Summary judgment will be granted on the state-law tort claims. An accompanying Order will be entered.

**March 19, 2013**                              **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 Chief U.S. District Judge