IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THREASTON WARREN, JR., et al.,

        Plaintiffs,

   v.

ALBERT FISHER, III, et al.,

        Defendants.

Civil Action
No. 10-5343 (JBS/KMW)

**OPINION**

APPEARANCES:

Kerri E. Chewning, Esq.
Lloyd Freeman, Esq.
Joseph A. Martin, Esq.
John Patrick Kahn, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033
    Counsel for Plaintiffs Threaston E. Warren, Jr., Marjorie
    K. Warren & Continental Aggregate Corp. LLC

Michael V. Madden, Esq.
Michael P. Madden, Esq.
Patrick J. Madden, Esq.
MADDEN & MADDEN, PA
108 Kings Highway East, Suite 200
PO Box 210
Haddonfield, NJ 08033
    Counsel for Defendants Albert Fisher III, Robert Howell &
    Joseph Hannagan, Jr.

**SIMANDLE,** Chief Judge:

**Contents**

I.  Introduction ............................................. 3

II.  Background ............................................... 5

  A.  Facts ................................................. 5

  B.  Procedural history .................................... 7

III.  Motion for reconsideration ............................ 11

 A.  Standard of review .................................... 11

 B.  First Amendment claim ................................. 12

 C.  Substantive due process .............................. 17

 D.  Equal Protection pleading standard ................... 20

IV. Motion to amend ........................................ 24

 A.  Standard of review .................................... 24

 B.  Class-of-one equal protection claim (Count 1) ......... 25

  1.  Different treatment ................................. 27

  2.  Similarly situated mines ............................ 30

  3.  Quasi-judicial immunity ............................. 34

  4.  Qualified immunity .................................. 36

 C.  Selective enforcement claim (Count 2) ................. 43

 D.  Civil conspiracy under § 1983 (Count 3) ............... 48

  1.  Substantive due process ............................. 52

  2.  Procedural due process .............................. 56

 E.  Official capacity claims .............................. 57

V.  Motion for attorneys' fees ............................. 58

VI. Conclusion ............................................. 59

## I. INTRODUCTION

There are three motions before the Court in this matter: a motion for reconsideration of the Court's March 19, 2013 Opinion [Docket Item 101] and a motion to amend the Complaint [Docket Item 106], brought by Plaintiffs Threaston E. Warren, Jr., Marjorie K. Warren, and Continental Aggregate Corp., LLC, as well as a motion for attorneys' fees [Docket Item 100] brought by Defendants Albert W. Fisher, III, Robert Howell, and Joseph J. Hannagan, Jr.

This case arises out of a prolonged and contentious dispute between Plaintiffs and Defendants over the Plaintiffs' sand mining operation in Quinton, N.J. Plaintiffs allege that the Defendants conspired to interfere with their property rights and selectively enforced town ordinances in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, as part of a campaign of harassment.

Plaintiffs seek reconsideration of this Court's previous dismissal of their First Amendment and substantive due process claims in the Second Amended Complaint, as well as the dismissal without prejudice of Plaintiffs' equal protection claim. Plaintiffs argue that the Court made improper factual determinations and improperly applied a heightened pleading

standard in deciding the previous motion. Because the Court

applied the proper pleading standard and did not make

determinations of contested material facts, the Court will deny

Plaintiffs' motion for reconsideration.

Plaintiffs also seek leave to file a Third Amended

Complaint, curing the deficiencies the Court identified in the

Plaintiffs' equal protection claim. In the Second Amended

Complaint, Plaintiffs failed to plead facts that suggest that

Continental was treated differently from similarly situated

mines. Because the Court finds that Plaintiffs now have pleaded

facts sufficient to plausibly suggest the existence of other

similarly situated mines, and because the Court finds Defendants

are not entitled to qualified immunity on the equal protection

and selective enforcement claims, the Court will grant the

motion to amend in part. However, the Third Amended Complaint

fails to state an actual deprivation of a constitutionally

protected property right, and therefore Plaintiffs fail to state

a claim for conspiracy under 42 U.S.C. § 1983. Accordingly, the

Court will deny the motion to amend in part, with respect to the

proposed § 1983 conspiracy claim.

Finally, Defendants move for this Court to award

discretionary attorneys' fees pursuant to 42 U.S.C. § 1988(b).

Because the Court does not find Plaintiffs' claims to be frivolous, the Court will decline to award fees to Defendants in this case.

## II. BACKGROUND

### A. Facts

Plaintiffs Threaston "Ed" Warren and Marjorie Warren own approximately 170 acres of land in Quinton, New Jersey, and hold a soil removal permit for the property.[1] (TAC ¶¶ 14, 16.) The Warrens lease portions of the property to Plaintiff Continental, which conducts a sand mining operation using the Warrens' soil removal permit. (Id. ¶¶ 15-18.)

In January 2008, the town planning board -- of which Defendants Fisher and Howell were members -- denied Plaintiffs' application to expand their existing soil removal activities on the property and to install screening and washing equipment, known as a "wash plant." (Id. ¶¶ 11, 126, 132-33.) Plaintiffs allege that this decision was the product of an agreement by

---

[1] The facts are drawn from the proposed Third Amended Complaint ("TAC") [Docket Item 106-3] and are accepted as true for the purposes of the motion to amend, which is reviewed under the same standard as a motion to dismiss. See Provenzano v. Integrated Genetics, 22 F. Supp. 2d 406, 411 (D.N.J. 1998). For more detailed recitations of facts, see Warren v. Fisher, No. 10-5343, 2011 WL 4073753, at *1-*2 (D.N.J. Sept. 12, 2011), and Warren v. Fisher, No. 10-5343, 2013 WL 1164492, at *1-*4 (D.N.J. Mar. 19, 2013).

Defendants to run Plaintiff Continental out of business or otherwise harass Plaintiffs and interfere with their property rights under the soil permit. Plaintiffs challenged the planning board's decision in New Jersey Superior Court, and Judge Anne McDonnell ruled that the planning board incorrectly denied the application on the grounds that Continental lacked a mining license for certain lots. (Id. ¶¶ 132, 141, 147-48.) Judge McDonnell also determined that the record before the planning board did not support the finding that a wash plant was a "primary use" rather than an "accessory use," as the Planning Board had concluded. (Id. ¶ 149.)

Both before and after the Superior Court ruling, Plaintiffs allege that they were subjected to threats, verbal abuse and other unfair treatment by Defendants. (Id. ¶¶ 138, 142, 155, 157-58.) Among Plaintiffs' chief complaints: (1) Defendant Fisher, as Mayor of Quinton, filled vacancies on the planning board with individuals who were unsympathetic or hostile to Plaintiffs (id. ¶¶ 162-68); (2) Defendants dubbed themselves "the Cool Run Gang," discussed Plaintiffs' mining operations and plotted to harass Plaintiffs (id. ¶ 49); (3) Defendant Gibson intentionally lodged complaints and false accusations against Plaintiffs, forming the basis for official town responses (id.

¶¶ 58-63); (4) Fisher appointed Defendant Hannagan to the position of "Official Township Pit Inspector," a post that Plaintiffs contend never existed before (id. ¶¶ 76-90); (5) Defendants subjected Plaintiffs to approximately 40 site inspections in less than three years, when other mines were inspected biannually, costing Continental tens of thousands of dollars (id. ¶ 104-109); (6) Defendants attempted, but failed, to amend a zoning ordinance to delete soil removal as a conditionally permitted use (id. ¶ 92); and (7) Hannagan trespassed on a part of Plaintiffs' land that was not permitted for mining to take a soil sample without permission (id. ¶¶ 169-173).

**B. Procedural history**

Plaintiffs initiated this action in the Superior Court of New Jersey, Salem County, and Defendants removed the action, pursuant to 28 U.S.C. § 1446, because the Complaint alleged violations of federal law.[2] [Docket Item 1.]

_____

[2] As the Court noted in its previous Opinion, in November 2011, Plaintiffs and Quinton Township entered into a settlement agreement. (Statement of Material Facts on Partial Mot. for Summary Judgment [Docket Item 85-1] ¶ 3.) The agreement acknowledged that Quinton undertook an independent study of wet mining operations in the Township and proposed amendments to its Land Use Ordinance in a manner beneficial to Plaintiffs, including permitting excavation and removal of a greater volume

After Plaintiffs amended the Complaint twice, the Township Defendants brought a motion for judgment on the pleadings and a motion for partial summary judgment. [Docket Item 85.] The Court held that Plaintiffs failed to state a "class of one" claim under the Equal Protection Clause of the Fourteenth Amendment because Plaintiffs failed to plead facts to permit a reasonable inference that similarly situated mines existed and were treated differently. <u>Warren</u>, 2013 WL 1164492, at *7-*8. "Aside from the fact that other mines exist in the town, the Second Amended Complaint provides no factual detail to suggest that the mines are similarly situated in any aspect, let alone all relevant aspects, to Continental." <u>Id.</u> at *8. The Court granted Defendants' motion for judgment on the pleadings without

---

of sand than was previously permitted under the ordinance. (<u>Id.</u> ¶ 4) Plaintiffs agreed to dismiss all claims against Quinton Township, but preserved their rights to pursue claims against Defendants Fisher, Howell and Hannagan ("Township Defendants") and Defendant Gibson. (<u>Id.</u> ¶ 5.) Township Defendants asserted that the Township signed a Reimbursement Agreement that "provides in essence that Plaintiffs shall not seek the recovery of damages against the individual defendants, to the extent that those damages will be ultimately paid by Quinton[.]" (<u>Id.</u> ¶ 9.) Plaintiffs asserted, to the contrary, that the settlement agreement reserved all claims against the Township Defendants, including those claims that could result in damages being paid by the Township. [Docket Item 87 at 15.]

prejudice, permitting Plaintiffs to file a motion to amend their equal protection claim. Id. at *9.

The Court dismissed Plaintiffs' substantive due process and First Amendment claims with prejudice. On the substantive due process claim, the Court ruled that Defendants' conduct pleaded in the Second Amended Complaint was "not so egregious that it shocks the conscience." Id. at *11. The Court stated that the conduct alleged "is not materially different" from that in Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d. Cir. 2004), where zoning officials applied subdivision requirements to the plaintiffs' property but not others, "pursued unannounced and unnecessary" inspection and enforcement actions," delayed permits and approvals, improperly increased tax assessments and "maligned and muzzled" the plaintiffs. Id. at *10-*11. In Eichenlaub, the Third Circuit dismissed the substantive due process claim because the court found the conduct did not shock the conscience but rather exemplified "the kind of disagreement that is frequent in planning disputes." Id. at *10 (quoting Eichenlaub, 385 F.3d at 286). Likewise, in this case, the Court explained that Plaintiffs made no allegations of corruption, self-dealing, ethnic bias, virtual taking or interference with otherwise constitutionally protected activity on the property.

Id. at *10-*11. Therefore, the substantive due process claim could not stand. Id. at *11.

On the First Amendment claim, in which Plaintiffs alleged they were retaliated against for exercising First Amendment rights by appealing the planning board decision to state court, the Court found that "Plaintiffs fail to plead a causal connection between the protected activity and the alleged retaliation . . . ." Id. at *12. The Court noted that the pleadings themselves "expressly linked Defendants' conduct to the adverse, substantive decision by the state court, not the Plaintiffs' exercise of any First Amendment rights," and that the alleged hostility began well before Plaintiffs exercised their First Amendment right to petition for redress. Id. The Court dismissed the claim. Id. Having disposed of all constitutional claims, the Court also dismissed Plaintiffs' claim for conspiracy under § 1983. Id. at *13.

Defendants then filed the present motion for attorneys' fees, and Plaintiffs moved for reconsideration and leave to amend the complaint. All discovery was stayed pending the outcome of these motions. [Docket Item 110.] The Court will begin by analyzing the motion for reconsideration, then address the motion to amend and the motion for attorneys' fees.

### III.   MOTION FOR RECONSIDERATION

#### A. Standard of review

Courts in this circuit apply the same standard for motions
for reconsideration under Rule 59(e), Fed. R. Civ. P., and L.
Civ. R. 7.1(i). A "judgment may be altered or amended if the
party seeking reconsideration shows at least one of the
following grounds: (1) an intervening change in the controlling
law; (2) the availability of new evidence that was not available
when the court granted the motion for summary judgment; or (3)
the need to correct a clear error of law or fact or to prevent a
manifest injustice." Star Pac. Corp. v. Star Atl. Corp., No. 08-
4957, 2012 WL 1079624, at *1 (D.N.J. Mar. 30, 2012) (quoting
Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d
669, 677 (3d Cir. 1999)); see also Watkins v. DineEquity, Inc.,
No. 11-7182, 2013 WL 396012, at *2 (D.N.J. Jan. 31, 2013)
(stating the grounds for relief under L. Civ. R. 7.1(i) include
an intervening change in controlling law, newly discovered
evidence that was not previously available, and the need to
correct a clear error of law or prevent manifest injustice).
Reconsideration is permitted "only when dispositive factual
matters or controlling decisions of law were presented to the
court but were overlooked." Einhorn v. Kaleck Bros., Inc., 713

F. Supp. 2d 417, 427 (D.N.J. 2010) (quoting Buffa v. N.J. State
Dep't of Judiciary, 56 F. App'x 571, 575 (3d Cir. 2003))
(internal quotation marks omitted). Reconsideration is not to be
used to simply argue for a second time what the Court has
already considered and rejected, nor is it an opportunity to
present new legal arguments that were available but not advanced
when the underlying motion was decided.

### B. First Amendment claim

Plaintiffs argue the Court clearly erred when it
"impermissibly ma[de] factual determinations based on the
limited record before" it, namely, "that because Defendants'
improper conduct toward Plaintiffs began before Plaintiffs filed
the Superior Court action in lieu of prerogative writ,
Defendants' 'antipathy' toward Plaintiffs 'existed wholly
independent' of Plaintiffs' Superior Court action." (Pl. Mot.
for Recon. [Docket Item 101-1] at 4.) Plaintiffs also contend
that the Court's statement that "the allegations that
Defendants' 'greater ferocity' of attacks on Plaintiffs'
operations 'expressly links Defendants' conduct to the adverse,
substantive decision by the state court, not the Plaintiffs'
exercise of any First Amendment rights'" was an improper factual
determination. (Id.)

Plaintiffs argue that they need only show "an inference of causation which can later be proved through other . . . types of circumstantial evidence in addition to temporal proximity." (Id. at 4, citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259 (3d Cir. 2007).) Plaintiffs also rely on Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000), arguing that this Court committed error by

> too narrowly constru[ing] Plaintiffs' claim by crediting the Township Defendants for their prior unlawful and harassing conduct and by making the fact-based judgment -- at the pleading stage -- that Plaintiffs must prove the Township's subjective motive to retaliate on the filing of the state court matter only, without consideration of other circumstantial evidence that may be provided through discovery.

(Id. at 6.) Moreover, Plaintiffs maintain that the Court improperly determined that Defendants' actions were motivated by the adverse ruling and not the exercise of First Amendment rights. (Id.) Plaintiffs argue that "the trier of fact should infer causation." (Id. at 5, quoting Lauren W., 480 F.3d at 267.) Plaintiffs conclude that they stated a prima facie case for First Amendment retaliation. (Id. at 6.)

As an initial matter, the Court notes that Plaintiffs made none of these arguments and cited none of these cases in their opposition to Defendants' previous motion seeking to dismiss the

13

First Amendment claim, and thus it is impossible to say that
these arguments and controlling precedents were "presented to
the court but were overlooked."[3] <u>Einhorn</u>, 713 F. Supp. 2d at 427;
<u>see</u> <u>also</u> (Pl. Opp'n [Docket Item 87] at 18-19). Plaintiffs
offered only four paragraphs in support of the sufficiency of
their First Amendment claim in the prior proceeding, one of
which recited the elements of a retaliation claim and two more
which concerned whether Continental was a "person of ordinary
firmness" and whether, under Defendants' theory for dismissal,
parties who assert their rights would be precluded from stating
a retaliation claim. (Docket Item 87 at 19.) On the facial
sufficiency of the claim, Plaintiffs stated only that "in the
Second Amended Complaint . . . the Township Defendants continued
their harassing attacks with greater ferocity after the Superior
Court's decision" and that the Complaint "very clearly
articulates a nexus between the state court action and the
improper activities of the Township Defendants." (<u>Id.</u> at 18.)

---

[3] Defendants had argued that "the antipathy between the parties
preexisted the filing of their prerogative writ complaint,
making the existence of any nexus between the same and later
'retaliatory' acts extremely doubtful." (Def. Mot. for Judgment
on the Pleadings & Partial Summ. J. [Docket Item 85-2] at 32.)

Because the Court did not overlook the argument Plaintiffs now advance, the motion for reconsideration will be denied.

Considering the substance of Plaintiffs' argument, the Court disagrees with Plaintiffs' characterization of the Court's prior Opinion. The Court did not make determinations of disputed fact or require that the Plaintiffs establish any facts at this stage of litigation; the Court highlighted the lack of factual pleading necessary to infer a connection between the exercise of First Amendment rights, i.e., petitioning the Superior Court, and the alleged retaliation, given the stated link between the retaliation and the Superior Court decision and the fact that harassment predated the filing in state court. See Warren, 2013 WL 1164492, at *11-*12. The Court observed that the Second Amended Complaint itself alleged that the campaign of harassment was set in motion before Plaintiffs filed in state court. The only reasonable inference from the Plaintiffs' own pleadings was that antipathy and alleged harassment of Plaintiffs predated any state court filing. The Second Amended Complaint further tied the escalated hostility to the state court's "decision" -- not to the filing of the suit -- and asserted that Defendants "became emboldened to continue implementing their unlawful agreement" after the state court issued its ruling. (Second Am.

Compl. ¶¶ 54, 57) (emphasis added). Plaintiffs' own brief,
clarifying the pleadings, emphasized the link between the
alleged harassment and "the Superior Court's decision." [Docket
Item 87 at 18.] Therefore, Plaintiffs failed to plead facts from
which a reasonable jury could infer the alleged retaliation
occurred as a result of Plaintiffs' exercise of First Amendment
rights. The motion for reconsideration will be denied.[4]

Plaintiffs now argue that "because the sufficiency of
Plaintiffs' First Amendment retaliation claim has not yet been
tested by motion, Plaintiffs must be afforded the opportunity to
amend the Complaint to address any deficiency in their
pleading." (Pl. Mot. for Recon. at 7, citing Phillips v. Cnty.
of Allegheny, 515 F.3d 224, 245 (3d Cir. 2007).) Plaintiffs did
not previously request, as alternative relief, leave to amend
the First Amendment claim, after Defendants challenged its

---

[4] Plaintiffs also suggest that the state court ruling is part and
parcel of the exercise of First Amendment rights, that without
First Amendment activity, there would be no state court ruling.
(Pl. Mot. for Recon. at 6.) The Court remains unpersuaded that
the Second Amended Complaint supported the inference that any of
Defendants' conduct was in retaliation for the filing of an
action in state court. The alleged harassing behavior predated
any filing in the Superior Court, and it allegedly accelerated
after the Superior Court's decision. Plaintiffs have identified
no case recognizing a First Amendment claim for retaliation
following a successful judicial ruling and this Court has found
none.

sufficiency. Plaintiffs have had multiple opportunities to formulate a colorable First Amendment claim and have failed to do so or to explain what the grounds for such a claim would be if permitted here. In a case filed more than three years ago, the search for a First Amendment legal theory must come to an end, and the case must move forward on the claims that exist.[5] Therefore, amendment would be futile.

## C. Substantive due process

Plaintiffs contend the Court erred in making "a subjective determination on 'conscience-shocking behavior' at the pleading stage." (Pl. Mot. for Recon. at 11.) Plaintiffs argue that the courts should not decide the issue of "conscience-shocking"

---

[5] In the proposed Third Amended Complaint, Plaintiffs assert that "disparate treatment" they experienced "pertained specifically to those aspects of mining operations that were the same across the three Quinton sand mines (and not just aspects that pertained to applications and expansions of mining operations, as the Court referenced and relied upon in the Opinion." (Pl. Mot. to Amend at 1-2); see also TAC ¶ 70 ("All such differential treatment . . . pertained to the operations of Continental (not to any pending applications before the Planning Board or Township Committee)"); id. ¶¶ 88, 101, 114, 175 (stating the inspections were not related to Plaintiffs' expansion plans). Thus, in their newest pleadings, Plaintiffs appear to assert that the unequal treatment they received was related to their normal operations, not to any effort to expand their operations, which was the matter before the planning board and which formed the basis for the state court ruling. These assertions underscore the futility of amendment in this case.

before a summary judgment motion, relying on Eichenlaub and

Schieber v. City of Philadelphia, 320 F.3d 409, 417 (3d Cir.

2003). (Id. at 11.) Plaintiffs further argue that the facts, as

pleaded, "show a pattern of conduct by specific township

officials to injure Plaintiffs for no legitimate government

purpose by illegitimate means." (Id. at 12.) Plaintiffs suggest

that the conduct alleged here is more egregious than that in

Eichenlaub and Perano v. Twp. of Tilden, 423 F. App'x 234 (3d

Cir. 2011), because here "Plaintiffs have alleged improper and

illegal conduct beyond that found in normal zoning board

disputes." (Id.) Plaintiffs request an opportunity to conduct

discovery and to amend the claim before the Court considers

whether the conduct shocks the conscience. (Id. at 13.)

Plaintiffs do not advance a viable theory for

reconsideration of this claim. Not all illegitimate behavior

shocks the conscience, and "[w]hether an incident 'shocks the

conscience' is a matter of law for the courts to decide . . .

.'" Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d

Cir. 2004) (citing Rochin v. California, 342 U.S. 165, 172

(1952)); see also Cnty. of Sacramento v. Lewis, 523 U.S. 833,

846 (1998) ("only the most egregious official conduct" shocks

the conscience). There is no need for the Court to put off this

determination until summary judgment, if the Court accepts all factual allegations in the pleadings as true and draws all reasonable inferences in favor of the plaintiffs. See Whittaker v. Cnty. of Lawrence, 437 F. App'x 105, 109 (3d Cir. 2011) (affirming the district court's holding that behavior did not shock the conscience, on a motion to dismiss); see, e.g., Loscombe v. City of Scranton, 902 F. Supp. 2d 532, 541-42 (M.D. Pa. 2012) (dismissing claims because the allegations did not constitute conscience-shocking conduct, on a motion to dismiss); Caissie v. City of Cape May, 619 F. Supp. 2d 110, 120 (D.N.J. 2009) (same); Taylor v. Altoona Area Sch. Dist., 513 F. Supp. 2d 540, 577 (W.D. Pa. 2007) (same).

The Court did not err in holding that Defendants' alleged conduct, even if actionable, did not shock the conscience. The Court continues to see little material difference between the conduct alleged here and that which did not shock the conscience as a matter of law in Eichenlaub. Although Plaintiff contends this action alleges "improper and illegal conduct beyond that found in normal zoning board disputes," the plaintiff in Eichenlaub did as well, by alleging unnecessary inspections, improperly increased tax assessments and attempts to malign and muzzle the plaintiffs. Eichenlaub, 385 F.3d at 286. Further

discovery would not be at all likely to unearth additional instances of harassment that may be said shock the conscience. The allegedly wrongful conduct directed at Plaintiffs -- that which must shock the conscience -- already has been experienced by, and is therefore known to, Plaintiffs. Plaintiffs raise no additional facts at this time that suggest an amendment would be anything but futile. Even accepting all allegations as true and making all reasonable inferences in the Plaintiffs' favor, and even assuming the conduct is actionable under other theories of liability, the Court finds that the conduct alleged is not so egregious as to rise to the level of shocking the conscience under the substantive due process clause standard. The motion for reconsideration is denied as to the substantive due process claim.

### D. Equal Protection pleading standard

Lastly, Plaintiffs argue that the Court erred in dismissing without prejudice the equal protection claim because "requiring allegations of specific facts to show that other mining operations in the township were similar in all relevant aspects and had similar applications before the planning board" is too high of a pleading standard. (Pl. Mot. for Recon. at 7-8.) Plaintiffs argue that Phillips, 515 F.3d at 229-31, 244-45, is

controlling precedent and does not require the plaintiff to
"identify in the complaint specific instances where others have
been treated differently for purposes of equal protection." (Id.
at 8, quoting Phillips, 515 F.3d at 245.) Plaintiffs contend
that in Perano the Third Circuit dismissed the equal protection
claim because the plaintiff "did not allege any facts concerning
the other developers and the Township's treatment of them."
(Id., citing Perano, 423 F. App'x at 238.) Plaintiff also cites
Mann v. Brenner, 375 F. App'x 232 (3d Cir. 2010), to suggest
that plaintiffs are not required to identify "specific instances
of different treatment." (Id. at 9.) Plaintiffs point to
instances where Continental was subject to unequal treatment and
conclude that "requiring a showing" that Continental is similar
to other mines "in 'kind and scope or impact' and had similar
matters pending before the planning board" is "impermissible."
(Id. at 9-10, citing Leatherman v. Tarrant Cnty. Narcotics
Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).)

     Plaintiffs' argument seems to conflate two components of an
equal protection claim under a class-of-one theory: the
"similarly situated" component and the unequal treatment
component. The Court did not dismiss Plaintiffs' claim because
they failed to allege specific instances of unequal treatment;

indeed, Plaintiffs clearly have done so.[6] Therefore, Plaintiffs'
citations to cases concerning the pleading standard for <u>unequal</u>
<u>treatment</u> are unavailing. Rather, the Court dismissed the claim
because Plaintiffs provided no factual allegations that would
support a reasonable inference that similarly situated mines
existed. Both components must be pleaded to survive a motion to
dismiss.

    <u>Phillips</u> and more recent decisions from the Third Circuit
are not to the contrary.[7] Requiring Plaintiffs to plead facts
that support a reasonable inference that similarly situated
mines existed and received different treatment is not a
heightened pleading standard. Plaintiffs must state the grounds
for their claims under the theories they choose to invoke. The

---

[6] The Court acknowledged that "Plaintiffs here allege that they
were treated differently from other mines" in its Opinion.
<u>Warren</u>, 2013 WL 1164492 at *8.

[7] The Court observes that <u>Phillips</u> was decided on February 5,
2008, more than a year before <u>Ashcroft v. Iqbal</u>, 556 U.S. 662
(2009). The Supreme Court in <u>Iqbal</u> emphasized that, to survive a
motion to dismiss, plaintiffs must plead factual content that
"states a plausible claim for relief . . . ." <u>Iqbal</u>, 556 U.S. at
679. The Supreme Court stated that where the facts permit a
court to infer only a "mere possibility of misconduct," the
complaint has not shown the pleader is entitled to relief
pursuant to Fed. R. Civ. P. 8(a)(2). <u>Id.</u> Plaintiffs' Second
Amended Complaint did not meet the <u>Iqbal</u> standard for the
"similarly situated" component of their equal protection claim.

very core of a class-of-one claim is that no one -- including, necessarily, those who were alike in all relevant aspects -- was treated as the plaintiffs were. See Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'") (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)). The Court's observation in its previous Opinion that Plaintiffs failed to plead such facts as the size, scope or impact of the mining operations or that other mines had similar matters pending before the planning board (or were treated differently when they did) was intended to highlight examples of facts that could help support a reasonable inference of the existence of similarly situated mines; the Court was not announcing a pleading requirement. Warren, 2013 WL 1164492 at *8.

Because the Court did not err by requiring Plaintiffs to plead factual content to support an inference that similarly situated mines existed, the motion for reconsideration is denied. In its previous Opinion and Order, the Court permitted Plaintiffs to file one final motion to amend the Complaint with regard to this claim. The Court now turns to that motion.

**IV. MOTION TO AMEND**

Plaintiffs bring three claims against the Township Defendants in the proposed Third Amended Complaint: (1) a class-of-one equal protection claim under the Fourteenth Amendment of U.S. Constitution and 42 U.S.C. § 1983, (2) a selective enforcement claim under the Fourteenth Amendment and § 1983, and (3) a § 1983 civil conspiracy claim. (TAC ¶¶ 188-212.)

**A. Standard of review**

A party may amend its pleading with the court's leave, and the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The court should permit amendment in the absence of undue delay or prejudice, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or the futility of amendment. Great W. Mining & Mineral Co. v. Fox. Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Amendment is futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Mickens v. Ford Motor Co., 900 F. Supp. 2d 427, 440 (D.N.J. 2012) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434-35 (3d Cir. 1997)). We apply these standards to the pleading in the Third Amended Complaint.

## B. Class-of-one equal protection claim (Count 1)

To state an Equal Protection Clause violation, under a class-of-one theory, a plaintiff "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). See also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). At the motion to dismiss stage, a plaintiff must allege facts sufficient to make plausible the existence of such similarly situated parties. Perano v. Twp. of Tilden, 423 F. App'x 234, 238 (3d Cir. 2011). To be "similarly situated," parties must be alike "in all relevant aspects." Startzell, 533 F.3d at 203.

In this case, Defendants claim that they are entitled to qualified immunity against the assertion of these claims. (Def. Opp'n at 11-25.) When a government defendant raises a qualified immunity defense, courts must determine (1) whether the

plaintiff has alleged a deprivation of a constitutional right and, if so, (2) "whether the right that was [allegedly] violated was clearly established, or, in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" See Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)); see also Mitchell v. Twp. of Willingboro, No. 11-1664, 2012 WL 5989358, at *4 (D.N.J. Nov. 28, 2012), recon. denied, (Mar. 22, 2013). The district court may begin its analysis at either step. Pearson v. Callahan, 555 U.S. 223, 242 (2009) ("Because the two-step Saucier procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

Therefore, the key inquiries for the Court are: (1) whether Plaintiffs plead sufficient factual content to support a reasonable inference that similarly situated mines existed and were treated differently and, if so, (2) whether Defendants are entitled to absolute or qualified immunity for their alleged actions.

### 1. Different treatment

Plaintiffs do not specify exactly which acts give rise to their equal protection claim, as they incorporate the entirety of the complaint into Count 1. (TAC ¶ 188.) However, Plaintiffs allege unequal treatment when they assert that Continental was subject to approximately 40 site inspections in less than three years when inspections typically occur on a semiannual basis, costing the Plaintiffs tens of thousands of dollars. (Id. ¶¶ 104, 109.) Over a two-and-a-half-year period, one would expect a typical mine to be subject to approximately five inspections, according to the facts pleaded. Continental allegedly was subject to eight times that many inspections. Viewed in the light most favorable to Plaintiffs, the pleadings plausibly suggest that something other than ordinary discretion was at play. At a certain point, discretion morphs into abuse of discretion. Viewing the pleadings in the light most favorable to the Plaintiffs, a reasonable jury could find this conduct qualifies as unequal treatment under the Equal Protection Clause, and therefore the claim survives this stage of the analysis.

Not all alleged conduct in the proposed Third Amended Complaint may form the basis for an equal protection claim,

however. Defendant Fisher's appointment of Defendant Hannagan to be the town's pit inspector does not treat Continental differently than other mines. (TAC ¶¶ 53-54, 76.) As Plaintiffs repeatedly note, Hannagan was appointed the "Official Township Pit Inspector," (see, e.g., TAC ¶¶ 76, 191), which suggests that Hannagan's position was a general one, not one limited to inspecting Continental only. Even if Fisher and Hannagan invented the position and Hannagan and others inspected only Continental, it would be that conduct -- the inspecting -- and not Hannagan's appointment that treated Plaintiffs differently. If Hannagan had been appointed as the pit inspector but never conducted any inspections, his appointment could not be said to have treated Continental differently from other similarly situated mines. Plaintiffs, at least, make no factual allegations that they were harmed by the appointment alone. Fisher's appointment of Hannagan, then, cannot be the basis for a class-of-one claim.

Likewise, Fisher's appointment of individuals to the planning board, which decides all matters before it regardless of whether those matters relate to Continental, cannot form the basis for a class-of-one claim. (TAC ¶¶ 164-67.) Again, it is not the appointment, but the board's actions, that could result

28

in Continental's allegedly unequal treatment, and Plaintiffs assert no facts that suggest that once Fisher's appointments were made, the board took any adverse action against Plaintiffs that constituted unequal treatment. Even accepting as true Plaintiffs' argument that the appointments were made out of some improper motive, the appointments themselves did not treat Continental differently from other mines. The same logic applies to allegations that Fisher took over the citizen complaint process for Continental, but not other mines. (TAC ¶¶ 66-67.) This conduct itself does not state a claim for an equal protection violation.

Along the same lines, the allegation that Defendants met and discussed Plaintiffs' mining operations does not state a claim for a class-of-one violation. (TAC ¶ 49.) Plaintiff was not harmed in a cognizable way by the meeting itself, for purposes of Count 1; other alleged conduct by Defendants resulted in unequal treatment. See Keefer v. Durkos, 371 F. Supp. 2d 686, 696 (W.D. Pa. 2005) (holding that even if it "may be possible for the Court to infer a discriminatory purpose or motive by the fact that a conspiracy was alleged to have been formed . . . this does not establish the differential treatment necessary for a violation of the Equal Protection Clause").

Finally, failed attempts to amend the zoning ordinances did not result in unequal treatment of Continental. (TAC ¶¶ 91, 94.) The conduct resulted in no treatment, because the attempts failed, and thus cannot support a class-of-one claim.

Nothing in this Opinion should be read to suggest that no rational basis existed for the difference in treatment. But an eight-fold increase in the frequency of inspections over a protracted period of time lends a plausible basis for Plaintiffs' claim, and that is sufficient to allege unequal treatment.

### 2. Similarly situated mines

In the Third Amended Complaint, Plaintiffs plead pages of facts about the similarities between Continental and two other mining operations in Quinton -- Quinton Sand & Gravel LLC and George Griscom -- in an attempt to permit a reasonable inference that all three are similarly situated. (TAC ¶¶ 19-46.) According to Plaintiffs, the three companies each operate a single mine pursuant to soil removal permits and are engaged in similar resource extraction operations, specifically sand and gravel removal and processing. (Id. ¶¶ 25-26.) All three companies are "dry mines" and their "physical operations were identical" and involved using equipment to extract gravel and sand, screening

or cleaning the extracted materials, and trucking them off site. (Id. ¶ 29, 34.) Plaintiff asserts that all three operations "involved the same types of environmental impact, positive and/or negative." (Id. ¶ 33.) The Griscom and Continental mines are adjacent and share an access road to the state highway system. (Id. ¶ 31.) All three are subject to the same town ordinances and the same permitting and compliance procedures, which govern "nearly all aspects of resource extraction, from the size of the mining field to hours of operation to reclamation of land to use of specific equipment." (Id. ¶¶ 28, 34-45.)

Defendants argue that these additional facts still fail to state a class-of-one claim. (Def. Opp'n [Docket Item 111] at 32-34.) Although the Plaintiffs have "alleged similarities between their operation and the operations of these other mines," Defendants argue Plaintiffs fail to plead "actual facts that would tend to establish that the operations are alike in all relevant aspects . . . ." (Id. at 33) (internal quotation marks omitted). Defendants contend that the Third Amended Complaint lacks factual detail about the "scope and scale" of the other mining operations. (Id. at 33-34.) Defendants add: "While it may be true that all of the mines were subject to the same

regulatory requirements . . . this similarity does little to establish that Continental was alike in all relevant aspects to these other mines." (<u>Id.</u> at 34.)

The Court finds that Plaintiffs' Third Amended Complaint contains sufficient factual content to support a reasonable inference that at least one of the two other mines is similarly situated in all relevant aspects to Continental. All three mines need not be identical in size or scope to be similarly situated for purposes of the Equal Protection Clause, but the details asserted about the nature, scale and impact of the operations, along with reasonable inferences drawn in Plaintiffs' favor, are enough to survive a motion to dismiss. In the cases the Court relied on in its previous opinion, the equal protection claims failed because the plaintiffs neglected to plead any facts that would tend to show that the plaintiffs were similarly situated to others. <u>See</u> <u>Perano</u>, 423 F. App'x at 238-39; <u>Mann</u>, 375 F. App'x at 238-39; <u>Minatee v. Special Treatment Unit</u>, No. 10-4654, 2011 WL 5873055, at *8-*9 (D.N.J. Nov. 16, 2011). The factual content contained in the Third Amended Complaint far exceeds the detail those plaintiffs pleaded and provides a reasonable basis, at this point in the litigation, for the inference that Continental was similarly situated in all material respects to

32

at least one of the two other mines. The allegations of the pleading must make it plausible that Plaintiffs will be able to prove their claim in due course; the pleadings stage is not the time to demand factual proof.

Defendants provide a string of citations to cases from the Third Circuit and other jurisdictions, which all caution against turning a zoning dispute into a federal case and the difficulty of bringing a successful class-of-one claim. (Def. Opp'n at 26-29.) None provide support for Defendants' contention that Plaintiffs' claim must be dismissed at this time. See Bizzarro v. Miranda, 394 F.3d 82 (2d Cir. 2005) (reviewing a district court's entry of summary judgment); Geinosky v. City of Chicago, 675 F.3d 743 (reversing the district court's dismissal of a class-of-one discrimination claim, on a motion to dismiss); Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1220 (10th Cir. 2011) (affirming dismissal of an equal protection claim because the plaintiff offered only conclusory allegations that other property owners were similarly situated); Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 610 F.3d 8, 15-16 (1st Cir. 2010) (affirming dismissal of a class-of-one claim because the complaint lacked details about different treatment and "provided no details about the

comparability" of the plaintiffs and other companies); <u>Cordi-Allen v. Conlon</u>, 494 F.3d 245 (1st Cir. 2007) (affirming the district court's grant of summary judgment); <u>McDonald v. Vill. of Winnetka</u>, 371 F.3d 992 (7th Cir. 2004) (affirming district court's entry of summary judgment). To be sure, Plaintiffs have not yet proved they are entitled to relief, but they are not required to prove their case at this stage, nor to do anything beyond pleading non-conclusory grounds for finding a plausible claim.

The allegation that Continental was subject to a significantly disproportionate number of inspections, without a rational basis, which caused monetary damages to Continental, is sufficient to state a claim, subject to Defendants' immunity defenses.

### 3. Quasi-judicial immunity

Defendants argue that Fisher and Howell, as planning board members, are entitled to absolute quasi-judicial immunity from suit for denying Plaintiffs' land-use application. (Def. Opp'n at 12.) Under <u>Dotzel v. Ashbridge</u>, 438 F.3d 320, 327 (3d Cir. 2006), quasi-judicial immunity is not "to be draped indiscriminately upon the shoulders of every municipal board of supervisors or like entity." Instead, courts are to examine the

official's job function by considering a number of factors enumerated in Cleavinger v. Saxner, 474 U.S. 193, 202 (1985): (1) the "need to assure that the function can be performed without harassment or intimidation," (2) the "presence of institutional safeguards against improper conduct," (3) the "degree of insulation from political influence," (4) the "use of precedent in resolving controversies," (5) the "adversarial nature of the process," and (6) the "availability of appellate review." Dotzel, 438 F.3d at 325-27. From the face of the complaint, the Court is able to conclude that appellate review is available through a prerogative writ in state court, and Dotzel's discussion about the need to perform planning board functions without harassment or intimidation applies with equal force in this case. See id. at 325-26. But the other factors are fact-specific. In Dotzel, the Third Circuit considered whether the local ordinances provided for notice to parties and the public, public hearings, procedural rights, the right to counsel, transcripts, the ground for removing board members, whether the board members apply precedent, whether board members are elected, whether ex parte communications are prohibited, and many other factors. Id. at 326-27. Here, Defendants have the

burden of pleading the defense of quasi-judicial immunity[8] but have not set forth any comparable facts to enable the Court to conduct this <u>Dotzel</u> inquiry. Therefore, the Court cannot hold that Fisher and Howell are entitled to absolute quasi-judicial immunity at this time.

### 4. Qualified immunity

Qualified immunity "shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 291 (3d Cir. 2006). The U.S. Supreme Court encourages district courts to resolve immunity questions "at the earliest possible stage in litigation." <u>Id.</u> (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)). When "material facts are not in dispute, the district court may decide whether a government official has established the defense of qualified immunity as a matter of law." <u>Downey v. Coal. Against Rape & Abuse, Inc.</u>, 143 F. Supp. 2d 423, 448 (D.N.J. 2001). The defendant bears the burden of pleading the qualified immunity defense. <u>Thomas</u>, 463 F.3d at 293.

---

[8] <u>See</u> <u>Montana v. Connor</u>, 817 F. Supp. 2d 440, 445 (D.N.J. 2011); <u>Davis v. Borough</u>, 669 F. Supp. 2d 532, 534 (E.D. Pa. 2009).

Because Plaintiffs have stated an actionable claim under §
1983 and the Fourteenth Amendment, the Court must consider
"whether the right that was [allegedly] violated was clearly
established, or, in other words, 'whether it would be clear to a
reasonable officer that his conduct was unlawful in the
situation he confronted.'" Curley, 499 F.3d at 207 (quoting
Saucier v. Katz, 533 U.S. 194, 202 (2001)). "If the right was
sufficiently well-established that a reasonable official would
have known of its existence, then the court must evaluate
whether a reasonable official would have known that the specific
conduct violated the clearly established right." Downey, 143 F.
Supp. 2d at 448.

Defendants argue that they are all entitled to qualified
immunity for their conduct. (Def. Opp'n at 21.) On the issue of
inspections, Defendants focus their argument on defending
Defendant Gibson's right to register complaints with the town
(id. at 22-24), although Gibson's actions are not at issue here,
as Gibson is not a movant. Defendants state that "given Gibson's
absolute right to submit his complaints, an objective public
official would not have known or believed that supporting or
encouraging Gibson violated some right possessed by Plaintiffs."
(Id. at 24.)

By framing Defendants' conduct as reacting to Gibson's complaints and then defending Gibson's right to register complaints, Defendants blur the focus on their own alleged conduct: overseeing, directing and conducting an inordinate number of inspections of Continental. The Supreme Court has explained that immunity defenses should be reviewed "in light of the specific context of the case, not as a broad general proposition . . . ." Saucier, 533 U.S. at 201. Because allegations may "support a violation of extremely abstract constitutional rights" -- such as "'the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness'" -- the dispositive inquiry should be "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Thomas, 463 F.3d at 300 (quoting Saucier, 533 U.S. at 201-02). Although Saucier and Thomas concerned claims of immunity against broad allegations, immunity likewise should not be invoked on the basis of abstract characterizations of Defendants' behavior. See Thomas, 463 F.3d at 300 ("when the qualified immunity inquiry is framed at that level of abstraction, the defense fails in its purpose"). The proper inquiry in this case is not whether a reasonable officer

would believe that supporting a resident's right to register complaints with the town violated Plaintiffs' rights, but whether a reasonable officer would believe that overseeing, directing and conducting an inordinate number of inspections of Continental, in a manner that was allegedly designed to harass Plaintiffs and to cost them tens of thousands of dollars, would have violated Plaintiffs' rights.

Plaintiffs allege some facts to support the inference that it would have been clear to a reasonable officer that his conduct was unlawful in that situation. The Third Amended Complaint includes contemporaneous statements by well-informed nonparties who, as the events were unfolding, believed the Defendants' conduct was actionable. Plaintiffs quote a planning board member, who told Defendants:

> What is fair is the law. Maybe you don't know or understand about the law. The law says you just took an oath of office. And I'm protecting those other 2675 people from a lawsuit. If you have in your back of your mind that you're going to get even with the applicant [Plaintiffs], it's my job as a planning board -- I'm not going away guys. . . . I'm not going to allow this Township to be put in a lawsuit.

(TAC ¶ 97.) In addition, Plaintiffs allege that the town zoning officer, Donna Bradway, told a Continental executive that "you should sue these people; they're really harassing you." (Id. ¶

113.) These statements are not sufficient to establish that it would have been clear to a reasonable officer that his conduct was unlawful. But the statements suggest that some individuals were aware that Defendants' conduct was not within the normal realm of discretion afforded to planning board members, mayors and other government officials by singling out this business for especially harsh scrutiny and regulation. The Third Amended Complaint also alleges that the Defendants themselves conspired "to fabricate and lodge numerous and continuing false complaints . . . with the Township and other regulatory bodies . . . and Defendants used these allegations to take action against Plaintiffs . . . ." (Id. ¶ 57.) Plaintiffs allege that Defendants subjected Plaintiffs to eight times the expected amount of inspections, costing Plaintiffs tens of thousands of dollars, despite the fact that "the Township's Engineer, the Salem County Department of Health, the Cumberland-Salem Soil Conservation District, and the State of New Jersey Department of Environmental Protection found on numerous occasions that Plaintiffs were not in violation of New Jersey's laws or the Soil Removal Permit." (Id. ¶ 105.) Taken together, these allegations suggest that it would have been clear to a

reasonable officer that singling out Plaintiffs in this way for selective and harassing enforcement violated Plaintiffs' rights.

This is not a situation where Plaintiffs are attempting to turn trivial differences in treatment or mere annoyance, dissatisfaction, and disagreement with town officials into a federal case. As pleaded, Plaintiffs allege that Defendants abused their positions of authority to subject Plaintiffs to substantially different adverse treatment, without a rational basis, in such a manner that went beyond mere discretion and caused identifiable harm to Defendants. It would have been clear to a reasonable officer that abuse of discretionary powers to single out Defendants in the manner alleged over a protracted period through various harassment tactics would violate the equal protection rights of Plaintiffs in these circumstances. Plaintiffs need not prove these officials are personally acquainted with or knowledgeable of the constitutional right to equal protection, as it suffices to show that a reasonable official in Defendants' position would know that such conduct is offensive to the legal duties required of one in his or her office. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("a reasonably competent public official should know the law governing his conduct"). Therefore, Defendants are not entitled

to qualified immunity for the conduct related to conducting inspections of Continental.[9]

Defendants are entitled to qualified immunity for their denial of the land-use application. Plaintiffs plead that Defendants denied the application because Plaintiffs did not have a mining license for certain lots and because a wash plant was a "principal use," not a conditional use. (TAC ¶¶ 129, 132.) A state court later found the record insufficient to support such a decision. (Id. ¶¶ 148-49.) Plaintiffs have not adequately pleaded that they had an automatic right to approval for their land-use application, or that it would have been clear to a reasonable board member that denying an application on such grounds would have violated Plaintiffs' federal statutory or constitutional rights. See Crawford-El v. Britton, 523 U.S. 574, 592 (1998) ("The immunity standard in Harlow itself eliminates all motive-based claims in which the official's conduct did not violate clearly established law."); Malcomb v. Dietz, 487 F. App'x 683, 685 (3d Cir. 2012) (stating an allegation of conspiracy does not affect the immunity decision because since

_____

[9] Because the allegations of Defendant Hannagan's trespass appear to relate to the other inspections, the Court declines to view this incident in isolation, and therefore the Court is unwilling to grant Defendant Hannagan immunity for that specific conduct at this time.

"immunity spares the official of any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity") (citing Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987)). Moreover, unlike the alleged abuse of the discretionary inspections, ruling on land-use applications is at the core of a planning board member's duties. A planning board member is not subject to personal liability merely because a determination by the board was incorrect. Therefore, Defendants are entitled to qualified immunity for the denial of the land-use application, and this conduct cannot be the basis of a class-of-one equal protection claim.

### C. Selective enforcement claim (Count 2)

To state a claim for selective enforcement, a plaintiff must plead (1) that he or she was treated differently from others similarly situated and (2) "that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right." PG Publ'g Co. v. Aichele, 705 F.3d 91, 115 (3d Cir. 2013) (ellipsis in original) (citing Dique v. N.J. State Police, 603 F.3d 181, 184 n.5 (3d Cir.

2010), and Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005)). In addition, the "element of intentional or purposeful discrimination" must be present, meaning that the plaintiff must plead the existence of a discriminatory purpose, "not mere unequal treatment or adverse effect." Aichele, 705 F.3d at 115 (quoting Snowden v. Hughes, 321 U.S. 1, 8 (1944), and Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs., 693 F.3d 359, 363 (3d Cir. 2012)).

Plaintiffs add a selective enforcement claim, Count 2, to the proposed Third Amended Complaint. (TAC ¶¶ 198-205.) The count largely overlaps with the class-of-one claim: "The increased site inspections were selectively targeted only against Plaintiffs." (TAC ¶ 202.)

As explained in the above discussion of Count 1, Plaintiffs adequately plead that Continental is similarly situated to other mines that were treated differently because Continental was subjected to significantly more inspections, costing the Plaintiffs tens of thousands of dollars. Plaintiffs also plead that a discriminatory intent is present here. Therefore, Plaintiffs' motion to amend, as to Count 2, will be granted.

The Court pauses for a point of clarification. To date, courts in the Third Circuit have not considered in great detail

44

the conceptual differences between, and distinct applications
of, class-of-one and selective enforcement claims. Plaintiffs
suggest in their motion brief, based on language from this
Court's decision in Simmermon v. Gabbianelli, 932 F. Supp. 2d
626, 631 (D.N.J. 2013), that selective enforcement claims are
not subject to rational basis review, unlike class-of-one
claims. (Pl. Mot. to Amend at 10-11.) In Simmermon, this Court
stated that Aichele distinguished class-of-one claims from
selective enforcement claims "and describe[d] a test for
selective enforcement claims that is different from the class of
one test and that does not include a rational basis component."
Simmermon, 932 F. Supp. 2d at 631. Indeed, in Aichele, the Third
Circuit noted that to state a claim for class-of-one claims,
plaintiffs must allege that "there is no rational basis for the
difference in treatment," but did not add a similar statement to
its discussion of selective enforcement claims. Aichele, 705
F.3d at 114-15. This difference is easily explained, however,
and does not lead to the conclusion that Plaintiffs appear to
endorse, namely that when discrimination is alleged on the basis
of an arbitrary classification -- when a suspect class or
fundamental right is not at issue -- the claim is not subject to
rational basis review. To the contrary, selective enforcement

claims like the one brought by Plaintiffs here are subject to rational basis review.

Class-of-one claims, by definition, are brought by plaintiffs who do not belong to a suspect class, so heightened scrutiny does not apply and all class-of-one claims are subject to rational basis review. Selective enforcement claims, by contrast, may be based on any type of discrimination, including but not limited to discrimination based on race and religion, which is reviewed with heightened scrutiny. Because some selective enforcement claims will receive heightened scrutiny, rational basis review does not apply to <u>all</u> selective enforcement claims. The statement in <u>Simmermon</u> was not intended to suggest, nor does <u>Aichele</u> or other Third Circuit jurisprudence hold, that claims like Count 2 -- alleging unequal treatment based on an arbitrary classification (not a suspect class or fundamental right) and resulting in increased property inspections -- are not subject to rational basis review. They are. Case law confirms that, in line with general Equal Protection Clause principles, allegedly arbitrary classifications at the heart of selective enforcement claims, where no suspect class is involved, are subject to rational basis review. <u>See</u> <u>Arnone v. Luzerne Cnty. Sheriff's Dep't</u>, No.

06-644, 2008 WL 4533683, at *3-*4 (M.D. Pa. Oct. 6, 2008)
(granting summary judgment in favor of the defendants on a
selective enforcement claim because the plaintiff "alleged no
facts to support the argument that he was singled out for arrest
based on any impermissible criteria, and . . . the officers
certainly had a rational basis for making his arrest"); Stepnes
v. Tennessen, No. 04-68, 2006 WL 2375645 (D. Minn. Aug. 16,
2006), aff'd, 267 F. App'x 481 (8th Cir. 2008) (stating that a
selective enforcement claim "is analyzed under the rational
basis test"); Palmore v. City of Pac., 851 F. Supp. 2d 1164,
1170 (E.D. Mo. 2010) (stating that, like a class-of-one claim,
"a 'selective enforcement' claim is also subject to a rational
basis scrutiny (where as here no suspect class or fundamental
right is involved)."); Morrow v. City of San Diego, No. 11-1497,
2012 WL 112542, at *4 (S.D. Cal. Jan. 11, 2012) (stating that a
defendant may defeat a selective enforcement claim by showing
his conduct was "rationally related to a legitimate state
interest and that a selective enforcement claim still lies if
plaintiff properly alleges the asserted rational basis is
pretextual) (internal quotation marks omitted); Stamas v. Cnty.
of Madera, 795 F. Supp. 2d 1047, 1079 (E.D. Cal. 2011)
(discussing a selective enforcement claim, stating that "a

plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive").

### D. Civil conspiracy under § 1983 (Count 3)

To state a civil conspiracy claim under § 1983, the plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." Perano, 423 F. App'x at 239. However, a § 1983 conspiracy claim "only arises when there has been an actual deprivation of a right." Id. See also Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000) ("The rule that civil conspiracy may not exist without an underlying tort is a common one."); Page v. City of Trenton, No. 04-874, 2005 WL 3588477, at *5 (D.N.J. Dec. 29, 2005) (holding that claims for civil conspiracy, alleging deprivation of constitutional rights, "require a showing that an underlying constitutional right has been violated to support the allegations of a conspiracy") (citing Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979)).

In the context of land use and permits, a "constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." Restifo v. Magill, No. 94-7347, 1995 WL 686982 (E.D. Pa.

Nov. 20, 1995) (quoting <u>Gagliardi v. Vill. of Pawling</u>, 18 F.3d 188, 192 (2d Cir. 1994)). If the government officer has discretion to confer the benefit, there is no constitutional entitlement. <u>Id.</u> Regarding land-use permits, "[o]nce issued and relied upon, a license or permit is a constitutionally protected property interest which cannot be revoked by the government without due process." <u>Lindsay v. City of Philadelphia</u>, 844 F. Supp. 229, 234 (E.D. Pa. 1994). Where plaintiffs allege interference with an existing mining permit, "[t]o survive a motion to dismiss, Plaintiffs must allege with sufficiency that Defendants have prohibited Plaintiffs from all work in operating their mining business or that the challenged regulations are not rationally related to a legitimate state interest." <u>Pioneer Aggregates, Inc. v. Pa. Dep't of Envtl. Prot.</u>, No. 11-325, 2012 WL 4364073, at *10 (M.D. Pa. Sept. 21, 2012) (citing <u>Latessa v. N.J. Racing Comm'n</u>, 113 F.3d 1313, 1318 (3d Cir. 1997)).

Here, Plaintiffs allege that the Township Defendants, with Defendant Gibson, conspired to deprive Plaintiffs "of their constitutional rights." (TAC ¶¶ 207-212.) Specifically, Plaintiffs allege that the "purpose of the Defendants' conspiracy was to harm Plaintiffs by attempting to limit, interfere with and otherwise deprive Plaintiffs of their

49

constitutionally protected property interest." (Id. ¶ 210.)
Plaintiffs claim that they "suffered harm, including significant
monetary losses" as a result of Defendants' conduct. (Id. ¶
212.) Plaintiffs allege that they were deprived "of the use and
enjoyment of their Soil Removal Permit and development of their
property" causing them to incur monetary losses, including: (1)
lost business opportunities totaling "tens of millions of
dollars in lost revenue and profit," (2) costs associated with
"having to purchase sand from other suppliers at prices in
excess of the cost Continental would have incurred if it were
able to use sand from its Quinton mine," and (3) lost "profits
on an opportunity to sell the property and mining operation."
(TAC ¶ 183.)

At the outset, the Court observes that Plaintiffs do not
state explicitly which of their constitutional or federally
protected rights have been violated. Plaintiffs do not appear to
style their claim as a conspiracy to violate their equal
protection rights. Plaintiffs bring their conspiracy claim under
§ 1983 and not § 1985(3), which is the customary vehicle for
conspiracy claims alleging violations of equal protection
violations by government actors. See Downey, 143 F. Supp. 2d at
446 ("§ 1985 claims must be premised upon an alleged violation

50

of a plaintiff's federal equal protection rights"). More
significantly, Plaintiffs define the "purpose" of the conspiracy
as interfering with, or depriving Plaintiffs of, "their
constitutionally protected property interest" (TAC ¶ 210); they
do not plead that the object of the conspiracy was to
discriminate against Plaintiffs or that the Defendants conspired
to deprive them of their equal protection rights.[10]

The Court strains to read Count 3 of the Third Amended
Complaint as alleging anything other than a scheme to deprive
Plaintiffs of their protected property interests. What is the
harm to a constitutional right that Defendants conspired to
inflict? The losses Plaintiffs allegedly sustained all relate to
"the use and enjoyment of their Soil Removal Permit and
development of their property . . . ." (Id. ¶ 183.) Plaintiffs
have not advanced any arguments that Defendants' actions
violated the Takings Clause of the Fifth Amendment, as applied
to the states through the Fourteenth Amendment, nor does the
Third Amended Complaint state facts that amount to a

---

[10] In their reply brief, Plaintiffs reemphasize that "Defendants'
actions were undertaken as part of the conspiracy to deprive
Plaintiffs of their constitutionally protected property interest
in the use of their Soil Removal Permit. Plaintiffs' [sic] have
adequately alleged that Defendants intentionally interfered with
Plaintiffs' property rights." (Pl. Reply at 8.)

constitutional taking. See Lingle v. Chevron U.S.A., Inc., 544
U.S. 528, 537 (2005) (describing compensable takings as "direct
government appropriation," extreme physical invasion of private
property, or regulation of property that is so onerous that it
"is tantamount to a direct appropriation or ouster"). Therefore,
guided by the language of the Third Amended Complaint itself and
Plaintiffs' briefs, the Court construes Plaintiffs' conspiracy
claim as one alleging an agreement to interfere with protected
property rights, which is a claim for a violation of procedural
or substantive due process under the Fourteenth Amendment. See
Pioneer, 2012 WL 4364073, at *9-*12 (analyzing under procedural
and substantive due process doctrines a mining company's claims
that application to buy fill from a specific source, a "source
approval request," was improperly denied).

### 1. Substantive due process

The most reasonable reading of Count 3 is that it presents
a substantive due process claim. However, as noted above, the
Court has dismissed Plaintiffs' substantive due process claim
and declines to upset that judgment upon reconsideration.
Because the Plaintiffs have alleged no conduct that shocks the
conscience and, therefore, no substantive due process claim
lies, the claim alleging a conspiracy to violate substantive due

process rights also must fail. See Gravely v. Speranza, 408 F. Supp. 2d 185, 191 (D.N.J. 2006) ("Section 1983 does not create a cause of action for conspiracy to deprive a person of their constitutional rights without an actual deprivation of rights protected by the statute."); Holt Cargo Sys., Inc. v. Del. River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998), aff'd, 165 F.3d 242 (3d Cir. 1999) ("a conspiracy claim is not actionable without an actual violation of section 1983").

Moreover, Plaintiffs fail to plead an actual deprivation of a constitutionally protected property interest. At all times, Plaintiffs continued their mining business. Plaintiffs do not allege that they have been prohibited from operating their business, or that their permit has been revoked, or that Defendants breached a mandatory duty to provide a certain benefit. See Pioneer, 2012 WL 4364073, at *10-*11 (stating that the plaintiffs must allege "that Defendants have prohibited Plaintiffs from all work in operating their mining business" or that they were deprived "of a fundamental right with regard to their ability to operate their mining business"). Plaintiffs fail to identify any right bestowed upon them under the soil removal permit of which they have been deprived. Plaintiffs have not alleged that the planning board's approval of their

application to expand their operations on the property was automatic or mandatory under the soil removal permit they held. Instead, Plaintiffs assert that Defendants did not advance valid reasons for denying their land-use application.[11] It is clearly established that parties do not have a constitutionally protected right to perform a specific business operation or in a land-use application not yet granted, absent a clear entitlement to approval. See id. at *11; Am. Marine Rail N.J., LLC v. City of Bayonne, 289 F. Supp. 2d 569, 583 (D.N.J. 2003) ("absent a clear entitlement to an approval or permit, there is no constitutionally protected property interest"); Holt, 20 F. Supp. 2d at 830.

The crux of Plaintiffs' claim is that they have been unable to maximize revenue and profits, either because they lost out on potential business opportunities (a sale of the property or unspecified "jobs and business opportunities" with unnamed customers) or they incurred additional expenses (by purchasing off-site sand or paying for additional inspections) as a result of Defendants' actions. (See TAC ¶¶ 183-87 (describing the losses as "prevent[ing] the Warrens from realizing the full

---

[11] Even if Plaintiffs were entitled to approval, the denial of their application does not shock the conscience, as required by the Fourteenth Amendment.

economic value of the Property and their Soil Removal Permit, as originally planned and intended," and articulating the injuries of lost business opportunities and increased costs and fees). These losses are not cognizable under substantive due process doctrine. The Constitution does not guarantee the right to maximize profits or secure future business of the type alleged here. Holt, 20 F. Supp. 2d at 836 (concluding that businesses have "no constitutionally recognized right to maximize its profits" and "the loss of future business does not amount to a violation of due process"); Pioneer, 2012 WL 4364073, at *11 (citing Holt, F. Supp. 2d at 830, and Phantom of E. Pa. v. N.J. State Police, No. 07-2748, 2008 WL 2039461, at *3 (E.D. Pa. May 13, 2008) for the same proposition); see also Nat'l Paint & Coatings Ass'n v. City of Chicago, 45 F.3d 1124, 1130 (7th Cir. 1995) (holding that "the interest in obtaining the maximum return on investment" is "not a fundamental right").

In short, according to the allegations of the proposed Third Amended Complaint, no specific protected property interest has been deprived, and even if a fundamental interest had been deprived, Defendants' conduct did not shock the conscience. Because there has been no underlying violation of substantive due process, a conspiracy to deprive Plaintiffs of their

protected property interests under substantive due process must
fail.

## 2. Procedural due process

Another possible interpretation of Count 3 is that it
presents a procedural due process claim. The Fourteenth
Amendment protects against state deprivations "of life, liberty
or property, without due process of law[.]" U.S. Const. amend.
XIV § 1. "To state a claim under § 1983 for deprivation of
procedural due process rights, a plaintiff must allege that (1)
he was deprived of an individual interest that is encompassed
within the Fourteenth Amendment's protection of 'life, liberty,
or property," and (2) the procedures available to him did not
provide 'due process of law.'" Hill, 455 F.3d at 233-34. See
also Gikas v. Wash. Sch. Dist., 328 F.3d 731, 737 (3d Cir. 2003)
(citing Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir.
1984)). To have a protected property interest, "a person clearly
must have more than an abstract need or desire for it" or "a
unilateral expectation of it," but rather must have "a
legitimate claim of entitlement to it." Robb, 733 F.2d at 292.
Courts look to state law to determine whether an asserted
property interest exists. Dee v. Borough of Dunmore, 549 F.3d
225, 229-30 (3d Cir. 2008).

Plaintiffs fail to state a claim for procedural due process. Plaintiffs' complaint is rife with references to arbitrariness of Defendants' conduct and the hostility with which Defendants acted. The Third Amended Complaint makes no reference to inadequate procedures or safeguards to protect property interests. The Third Amended Complaint contains no references to "procedure" or to "due process." Plaintiffs make no allegations that it lacked the ability to challenge administrative decisions or that the Township Defendants denied Plaintiffs the opportunity to challenge decisions or actions through adequate channels. In short, it is a stretch to construe Count 3 as a procedural due process claim.

In sum, Plaintiffs do not state a claim under either substantive or procedural due process. Therefore, the Court denies the motion to amend the § 1983 conspiracy claim, because amendment would be futile.

### E. Official capacity claims

Defendants argue that all claims against Defendants in their official capacities cannot stand because § 1983 claims against board members in their official capacities are to be treated as a suit against the entity and, in this case, Plaintiffs have settled all claims with the Township of Quinton.

(Def. Opp'n at 25-26.) To their credit, Defendants concede that the "facts related to the settlement with Quinton and the documents related to that settlement are taken from matters outside the pleadings," but they also maintain that the "settlement with Quinton is undisputed and should be considered . . . in the interests of justice." (Id. at 26.)

As noted above, supra note 2, the terms of settlement are disputed, making it inappropriate to dismiss those claims on the present motion.

## V.  MOTION FOR ATTORNEYS' FEES

Defendants argue that they "are entitled to an award of attorney's fees and costs since they are prevailing parties in accordance with 42 U.S.C.A. § 1988 and because plaintiffs' claims were frivolous, unreasonable and groundless." (Def. Mot. at 3 [Docket Item 100].) A district court may, in its discretion, award attorney's fees to a prevailing defendant in a § 1983 proceeding "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Commonwealth v. Flaherty, 40 F.3d 57, 60-61 (3d Cir. 1994) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)); § 1988(b).

At this stage, Plaintiffs continue to have a viable claim under § 1983 for an equal protection violation. Plaintiffs advanced arguable, if ultimately unsuccessful, positions in relation to the other claims that the Court dismissed. Of course, the "fact that the effort was ultimately unsuccessful does not mean it was frivolous." Curran v. Se. Pa. Trans. Auth., 109 F. Supp. 2d 394, 398 (E.D. Pa. 2000). It was reasonable for Plaintiffs to believe they had viable claims and to pursue those claims as they did. The Court finds a lack of evidence that Plaintiffs' case was so frivolous, unreasonable or without foundation that the fee-shifting statute should be invoked here. Defendants' motion for attorneys' fees will be denied.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is denied. Plaintiffs' motion to amend is granted in part and denied in part. The motion is granted as to Count 1 and Count 2 on the grounds that Defendants allegedly subjected Plaintiffs to unequal treatment related to inspections of Plaintiffs' property, and Defendants are not entitled to an immunity defense for that conduct. Plaintiffs' motion to amend Count 3 is denied for failure to state a claim under the Fourteenth Amendment. At this time, claims against the

Defendants in their official capacities will be permitted, as the Court does not rule whether Plaintiffs extinguished those claims in their settlement with the Township. Defendants' motion for attorneys' fees is denied.

An accompanying Order will be entered.


 **December 20, 2013**                      **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge